UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| KERRY ANNE REGAN, | : | 11 CIV 4511 (CM) |
| Plaintiff, | : | |
| vs. | : | |
| THE BENCHMARK COMPANY LLC, TRINET GROUP, INC., ADAM GORDON and RICHARD MESSINA, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS THE BENCHMARK COMPANY LLC, ADAM GORDON AND RICHARD MESSINA**

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
Anthony Paduano
Katherine B. Harrison
Jillian A. Lazar

Attorneys for Defendants
The Benchmark Company LLC,
Adam Gordon and Richard Messina

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS PLEAD IN THE COMPLAINT ........................................ 2

ARGUMENT ........................................ 6

I. THE COURT SHOULD DISMISS PLAINTIFF'S TITLE VII CLAIMS ........................................ 6

A. Many Of The Factual Allegations Underlying Plaintiff's Title VII Claims Are Time-Barred ........................................ 6

B. Plaintiff Has Not Stated A Plausible Title VII Claim ........................................ 8

1. Disparate Treatment ........................................ 9

2. Hostile Work Environment ........................................ 12

3. Retaliation ........................................ 16

II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER THE NEW YORK CITY CODE ........................................ 20

A. The NYC Code Claims Must Be Dismissed Because Plaintiff Cannot Demonstrate That The Alleged Conduct Had An Impact In New York City ........................................ 21

B. Plaintiff Fails To Plead Facts Demonstrating That Gordon And Messina Aided And Abetted NYCHRL Violations ........................................ 22

C. Plaintiff's NYC Code Claims are Time-Barred ........................................ 23

CONCLUSION ........................................ 25

# TABLE OF AUTHORITIES

## Cases

Alfano v. Costello,
294 F. 3d 365 (2d Cir. 2002) ..... 13

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009), ..... 8, 9

Ballard v. Children's Aid Society,
09 Civ. 5263, 2011 WL 1664980 (S.D.N.Y. April 28, 2011) ..... 17

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007). ..... 8

Benardo v. American Idol Productions, Inc.,
11-CV-0625, 2011 WL 2565489 (S.D.N.Y. June 21, 2011) ..... 6, 7, 8n, 11, 13, 17, 21

Bermudez v. City of New York,
10 Civ. 1162, 2011 WL 1218406 (March 25, 2011) ..... 20, 23

Brennan v. Metropolitan Opera Association, Inc.,
192 F.3d 310 (2d Cir. 1999) ..... 14, 15

Brown v. Henderson,
257 F.3d 246 (2d Cir. 2001) ..... 9

Burlington Indus., Inc. v. Ellerth,
524 U.S. 742, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998) ..... 11, 17

Canales-Jacobs v. New York State Office of Court Admin.,
640 F. Supp. 2d 482 (S.D.N.Y. 2009) ..... 12

Castro v. New York City Bd. of Educ. Pers.,
96 Civ. 6314, 1998 WL 108004 (S.D.N.Y. March 12, 1998) ..... 15

Chambers v. Time Warner, Inc.,
282 F. 3d 147 (2d Cir. 2002) ..... 11n

Clark County School Dist. v. Breeden,
532 U.S. 268, 273 (2001) ..... 18

Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.,
10 Civ. 2249, 2011 WL 666187 (S.D.N.Y. Feb. 9, 2011) ..... 22

Costa v. City of New York,
546 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Kaplan, J.) ........ 19

Demoret v. Zegarelli,
451 F. 3d 140 (2d Cir. 2006) ........ 15

Dixon v. International Federation of Accountants,
416 Fed. Appx. 107 (2d Cir. 2011) ........ 18

Duffy v. Drake Beam Morin,
96 Civ. 5606, 1998 WL 252063 (S.D.N.Y. May 19, 1998) ........ 21

Durant v. A.C.S. State and Local Solutions, Inc.,
460 F. Supp. 2d 492 (S.D.N.Y. 2006) ........ 20

Figueroa v. City of New York,
118 Fed. Appx. 524 (2d Cir. 2004) ........ 9, 13

Fleming v. MaxMara USA, Inc.,
371 F. Appx. 115 (2d Cir. 2010) ........ 15

Fried v. LVI Services, Inc.,
10 Civ. 9308, 2011 WL 2119748 (S.D.N.Y. May 23, 2011) ........ 22

Galabya v. New York City Bd. of Educ.,
202 F.3d 636 (2d Cir. 2000) ........ 11

Garber v. Legg Mason, Inc.,
347 Fed. Appx. 665 (2d Cir. 2009) ........ 8

Gorokhovsky v. City of New York,
10 Civ. 8848, 2011 WL 2019423 (S.D.N.Y. May 19, 2011) ........ 8n

Guarino v. St. John Fisher College,
321 Fed. Appx. 55 (2d Cir. 2009) ........ 13

Harris v. Forklift Sys., Inc.,
510 U.S. 17 (1986) ........ 13

Hongyan Lu v. Chase Investment Svcs. Corp.,
412 Fed. Appx. 413, 2011 WL 782226 (2d Cir. 2011) ........ 8n

Jiminez v. City of New York,
605 F. Supp. 2d 485 (S.D.N.Y. 2009) ........ 23

Kiobel v. Royal Dutch Petroleum Co.,
621 F.3d 111 (2d Cir. 2010) .......... 8

Leibovitz v. N.Y. City Transit Auth.,
252 F.3d 179 (2d Cir. 2001) .......... 9

Lee v. Sony BMG Music Entertainment, Inc.,
07 Civ. 6733, 2010 WL 743948 (S.D.N.Y. March 3, 2010) .......... 19

Lucas v. Pathfinder's Pers., Inc.,
01 Civ. 2252, 2002 WL 986641 (S.D.N.Y. May 13, 2002) .......... 21

Mazurkiewicz v. New York City Health and Hospitals Corp.,
09 Civ. 5692, 2010 WL 3958852 (S.D.N.Y. Sept. 16, 2010) .......... 7, 18

McKenzie v. Gibson,
07 Civ. 6714, 2008 WL 3914837 (S.D.N.Y. Aug. 25, 2008) .......... 16

Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,
746 F. Supp. 2d 575 (S.D.N.Y. 2010) .......... 14, 16

Moultrie v. VIP Health Care Servs.,
08-CV-0457, 2009 WL 750219 (E.D.N.Y. March 19, 2009) .......... 11n

Nat'l R.R. Passenger Corp. v. Morgan,
536 U.S. 101 (2002) .......... 8n

Nugent v. St. Lukes-Roosevelt Hosp. Center,
05 Civ. 5109, 2007 WL 1149979 (S.D.N.Y. April 18, 2007) .......... 15, 18

Ochei v. The Mary Manning Walsh Nursing Home Company, Inc.,
10 Civ. 2548, 2011 WL 744738 (S.D.N.Y. March 1, 2011) .......... 10, 20

Oncale v. Sundowner Offshore Services, Inc.,
523 U.S. 75, 118 S. Ct. 998, 1002 (1998) .......... 13

Parekh v. Swissport Cargo Services,
CV-08-1994, 2009 WL 290465 (E.D.N.Y. Feb. 5, 2009) .......... 17

Patane v. Clark,
508 F.3d 106 (2d Cir. 2007) .......... 9, 11

Payne v. Malemathew,
09-CV-1634, 2011 WL 3043920 (S.D.N.Y. July 22, 2011) .......... 19

Pearce v. Manhattan Ensemble Theater, Inc.,
528 F. Supp. 2d 175 (S.D.N.Y. 2007) ........ 21, 22

Pilgrim v. McGraw-Hill Companies, Inc.,
599 F. Supp. 2d 462 (S.D.N.Y. 2009) ........ 23

Pugni v. Reader's Digest Association, Inc.,
05 Civ. 8026, 2007 WL 1087183 (S.D.N.Y. April 9, 2007) ........ 19

Reyes v. City University of New York,
06 Civ. 3639, 2007 WL 2186961 (July 26, 2007) ........ 11n

Salvatore v. KLM Royal Dutch Airlines,
No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) ........ 21

Sardina v. United Parcel Service, Inc.,
254 Fed. Appx. 108 (2d Cir. 2007) ........ 15

Senno v. Elmsford Union Free School Dist.,
08 Civ. 2156, 2011 WL 3296100 (S.D.N.Y. July 28, 2011) ........ 12

Shah v. Wilco Systems, Inc.,
27 A.D.3d 169, 806 N.Y.S.2d 553 (1st Dep't 2005) ........ 22

Siddiqi v. N.Y.C. Health & Hosp. Corp.,
572 F. Supp. 2d 353 (S.D.N.Y. 2008) ........ 24

Sigmon v. Parker Chapin Flattau & Klimpl,
901 F. Supp. 667 (S.D.N.Y. 1995) ........ 12

Stepheny v. Brooklyn Hebrew School for Special Children,
356 F. Supp. 2d 248 (E.D.N.Y. 2005) ........ 16

Stetson v. NYNEX Serv. Co.,
995 F.2d 355 (2d Cir. 1993) ........ 19

Stoddard v. Eastman Kodak Company,
309 Fed. Appx. 475 (2d Cir. 2009) ........ 17

Wahlstrom v. Metro-North Commuter R.R. Co.,
89 F. Supp. 2d 506 (S.D.N.Y. 2000) ........ 21

Whaley v. City University of New York,
555 F. Supp. 2d 381 (S.D.N.Y. 2008) ........ 23

White v. Fuji Photo Film USA,
434 F. Supp. 2d 144 (S.D.N.Y. 2006) .......... 10, 14

Williams v. New York City Dep't of Sanitation,
00 Civ. 7371, 2001 WL 1154627 (S.D.N.Y. Sept. 28, 2001) .......... 16

Williams v. Time Warner Inc.,
09 Civ. 2962, 2010 WL 946970 (S.D.N.Y. March 3, 2010) .......... 13, 16, 24

Wilson v. New York City Police Dep't.,
09 Civ. 2632, 2011 WL 1215031 (S.D.N.Y. Feb. 4, 2011) .......... 24

Woods v. Enlarged City School Dist. of Newburgh,
473 F. Supp. 2d 498 (S.D.N.Y. 2007) *aff'd* 288 Fed. Appx. 757 (2d Cir. 2008) .......... 18

**Other Authorities**

Fed. R. Civ. P. 10(c) .......... 11

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 21

New York City Administrative Code §8-101 .......... 2, 20

New York City Administrative Code §8-107 .......... 2, 20

The Benchmark Company LLC ("Benchmark"), Adam Gordon ("Gordon") and Richard Messina ("Messina") (together "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiff Kerry Anne Regan under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff worked as an institutional sales trader for Defendants' small broker dealer, from early 2003 until she decided to stop working in July 2008, citing psychological problems. Based on a trading room and certain co-workers that she found offensive and a transfer out of that environment to Benchmark's New Jersey office, Plaintiff alleges discrimination by disparate treatment, hostile work environment and retaliation under Title VII and the New York City Administrative Code ("NYC Code"), and aiding and abetting against Gordon and Messina, Benchmark's principals, under the NYC Code.

For her Complaint, Plaintiff has cobbled together a series of unrelated comments, events and observations at Benchmark that she found offensive. Some of the things Plaintiff alleges are silly, some are unprofessional, and many are simply untrue. But when parsed under the governing law for pleading a legal claim, these allegations do not state a plausible claim for gender discrimination or retaliation because the events and comments Plaintiff recites were not directed at her as a woman and because she suffered no materially adverse employment action.

Plaintiff does not allege any improper physical contact or sexual advances directed at her or any other person. Nor does she allege any direct evidence of discrimination such as comments singling her out as a woman. Her complaint does not contain any real allegations of pay disparity or that Benchmark failed to promote her or that it demoted her.

As a matter of law, the factual allegations simply do not support the Title VII claims alleged. Without valid federal claims, there is no basis for subject matter jurisdiction over Plaintiff's New York Code claims. In any event, Plaintiff's New York Code claims should be dismissed for failure to state a claim, because the events alleged occurred outside New York City and thus outside the reach of the statute and because the claims are time-barred. Accordingly, Defendants Benchmark, Gordon and Messina respectfully request that Plaintiff's complaint be dismissed in its entirety.

## STATEMENT OF FACTS PLEAD IN THE COMPLAINT[1]

The core of Plaintiff's complaint is that most of the Benchmark traders are men and that the "environment at Benchmark was rife with sexist conduct and that male traders regularly made negative, sexually graphic and objectifying comments about women." (Complaint ¶43). Plaintiff asserts claims for discrimination and retaliation under Title VII and the New York City Administrative Code §8-101 et. seq., (the "Code"), and a claim that Gordon and Messina aided and abetted discrimination and retaliation pursuant to §8-107 of the Code.

Plaintiff commenced her employment with Benchmark on March 3, 2003 at its office in New York City, with Gordon and Messina as her supervisors. (Compl. ¶ 26, 28). According to the Complaint, "[f]rom virtually the commencement of her employment at Benchmark, Plaintiff was subjected to differential treatment in the terms and conditions of her employment based on her sex." (Compl. ¶ 36). Allegedly, Plaintiff was denied access to Benchmark's "most advanced trading systems and tools" and "forced to share accounts" with other traders, unlike the male traders. (Compl. ¶¶ 37, 38, 39, 41, 42). Plaintiff also complains that "the workplace environment at Benchmark was hostile and oppressive." (Compl. ¶ 10).

[1] The facts alleged in the complaint are assumed to be accurate only for the purposes of this motion to dismiss.

Plaintiff alleges that her male colleagues used binoculars to look in on college women who lived across the street, and sometimes made comments "of a sexual nature" about the women. (Compl. ¶¶ 45, 46, 47, 48). Plaintiff's colleagues also allegedly played a "game" known as "wouldja, wouldja?" with respect to women on television, "discussed sexual acts," and used their computers to view and pass along "sexualized material" to one another and their clients. (Compl. ¶¶ 49, 50, 53, 58). Plaintiff alleges that her colleague Billy Miller emailed "pornography videos to other Benchmark employees, including Reagan" and certain of Plaintiff's clients. (Compl. ¶¶ 51, 52). Plaintiff does not assert that she was singled out for the receipt of pornography because she is female, nor does she allege that women were the only recipients at Benchmark of pornography from Mr. Miller. Plaintiff alleges that Gordon organized trips to strip clubs for himself and his colleagues. (Compl. ¶ 59). On or about April 4, 2003, Gordon allegedly brought Plaintiff and other Benchmark employees to a strip club, despite the fact that Plaintiff allegedly voiced her discomfort with the situation. (Compl. ¶¶ 63, 64, 66). Plaintiff pleads no facts indicating that her inclusion in a company outing to a strip club was motivated by her gender.

Plaintiff alleges that the trading floor "was filled with shouting, cursing, and sounds from pornographic videos," the noise of which "made it difficult for Regan to make and receive phone calls." (Compl. ¶ 76). When Plaintiff complained about the noise in the room to Gordon and Messina, she was given permission to make telephone calls from a conference room or Messina's office. (Compl. ¶ 77).

Plaintiff alleges that, in September 2006, she traveled to Dallas, Texas to meet with a new client, Front Point Partners ("FPP"). (Compl. ¶ 91). Gordon allegedly "made clear" that Plaintiff was to be "flirtatious" and "solicitous" with FPP's representatives. (Compl. ¶ 92). When Plaintiff declined to attend a party with FPP, Gordon allegedly criticized her and removed

her from the FPP account. (Compl. ¶¶ 94, 95, 96). Plaintiff claims that the "rampant sexual conduct at Benchmark, including but not limited to comments and conduct directed at Plaintiff, made it increasingly difficult for Plaintiff to function efficiently in the workplace." (Compl. ¶ 75). Yet Plaintiff does not provide any example of "sexual conduct" directed at her.

Allegedly, when Plaintiff wore a business suit, her male colleagues would ask "where are you all ho'd up to go," and when she wore jeans, they would make crass but favorable comments on her appearance. (Compl. ¶¶ 68, 69). Plaintiff's colleagues allegedly would give her phone message slips containing "inappropriate" comments, ask her to play "wouldja, wouldja?" with them, and send sexually explicit emails to her office computer. (Compl. ¶¶ 70, 72, 73). Plaintiff claims Gordon "required" her to attend firm events and "flirt" with clients, "something male traders at Benchmark were not required to do." (Compl. ¶ 74).

Plaintiff's colleague Robert Bourque ("Bourque") allegedly commented on his marriage by stating to his male colleagues "it's great [because] I got my bitch trained." (See Compl. ¶ 56). Plaintiff further alleges that she was "subjected to particularly hostile and misogynistic comments from Bourque" in early 2005. (Compl. ¶ 80). Plaintiff alleges that Bourque "upset and humiliated" her by stating that "Kerry is like a dog, when you beat it enough it learns." (Compl. ¶ 81-82). In "Spring 2006," Bourque allegedly told a story about slapping a woman to his colleagues, and then turned to Plaintiff and said that "if she was not careful she would be next." (Compl. ¶¶ 85, 86). In "June 2006," Bourque allegedly commented to Benchmark clients that Plaintiff is "about as smart as this chair I am sitting on." (Compl. ¶ 87). Although Plaintiff allegedly complained to Gordon and Messina about Bourque's "harassing conduct to which she regularly was being subject based on her sex," "on information and belief" neither Gordon nor Messina disciplined Bourque. (Compl. ¶¶ 88, 89, 90).

Because Benchmark allegedly failed to address Plaintiff's complaints about the "sexually harassing environment," Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 28, 2007. (Compl. ¶¶ 140, 141). Following the filing of the EEOC charge, Plaintiff alleges that Benchmark retaliated by subjecting her to an "even more hostile" work environment. (Compl. ¶ 142). This alleged hostility included being "ostracized" by colleagues who "refused to interact with Regan" and having Plaintiff's business-related questions "ignored." (Compl. ¶¶ 143, 144). Plaintiff's seat was allegedly moved to a new location on the trading floor on May 29, 2007, and her new computer frequently malfunctioned. (Compl. ¶¶ 151, 152, 153, 154). Plaintiff alleges that on June 11, 2007, Gordon "refused" to greet a client of Plaintiff's at a golf outing. (Compl. ¶ 158). Plaintiff further claims that on May 3, 2007 her commission payment was "incorrectly" reduced due to an error allegedly made by Benchmark's head trader. (Compl. ¶ 149).

Plaintiff alleges that on September 13, 2007, following her submission of a supplemental affidavit to the EEOC, Gordon and Messina informed Plaintiff that she was being transferred to a new office location in Jersey City, New Jersey. (Compl. ¶¶ 169, 170, 171, 172). When Plaintiff complained about the transfer, Gordon allegedly responded that she was being transferred due to her "complain[ts] about the environment" at Benchmark's New York office. (Compl. ¶¶ 173, 174, 176). Plaintiff further alleges that Benchmark did not previously have an office in Jersey City, and established that office location "solely for" Plaintiff to "punish" her. (Compl. ¶¶ 177, 181, 182). Plaintiff asserts a litany of complaints about the Jersey City office, including that it was small, did not have a Benchmark sign outside the office, and it contained no furniture other than a desk, chair, filing cabinet, and a computer that was "disconnected" when she first arrived at the office (by Plaintiff's own allegation, the computer was later "set up" for

her). (Compl. ¶¶ 184, 185, 188, 193). Plaintiff further alleges that she had technical issues with the computer, that her calls and emails to Benchmark management "routinely went unanswered," and that she felt "cut off" from her colleagues' "conversations about business and daily transactions." (Compl. ¶¶ 193, 195, 201, 203).

Plaintiff alleges that, in November 2007, she was "diagnosed with severe depression" and advised to take a medical leave of absence from Benchmark. (Compl. ¶¶ 213, 214, 215). In June/July, 2008, Plaintiff and her doctor allegedly concluded that Plaintiff could no longer work at Benchmark; on July 11, 2008, Plaintiff emailed a note to Gordon and Messina stating that she had been constructively discharged from Benchmark. (Compl. ¶¶ 220, 221).[2]

## ARGUMENT

## POINT I.

## THE COURT SHOULD DISMISS PLAINTIFF'S TITLE VII CLAIMS

When the Complaint is parsed, it reveals the following types of allegations: allegations which are time-barred; conclusory allegations which the Court need not accept as true; gender-neutral allegations; and the remaining few allegations, which do not state a plausible claim for gender discrimination or retaliation. Accordingly, Plaintiff's Title VII claims should be dismissed.

### A. Many Of The Factual Allegations Underlying Plaintiff's Title VII Claims Are Time-Barred

In New York, Title VII claims "must be filed with an administrative agency [such as] the EEOC … within three hundred days after the alleged unlawful employment practice occurred." Benardo v. American Idol Productions, Inc., 11-CV-0625, 2011 WL 2565489, at *4

[2] The Complaint also includes lengthy allegations concerning Gevity (defendant TriNet Group, Inc.'s predecessor in interest), Benchmark's human resources provider during the relevant period, about which Benchmark, Gordon and Messina take no position for purposes of this motion.

(S.D.N.Y. June 21, 2011) (McMahon, J.). "Failure to file a timely EEOC charge results in the dismissal of federal claims." Mazurkiewicz v. New York City Health and Hospitals Corp., 585 F. Supp. 2d 491, 496 (S.D.N.Y. 2008) (McMahon, J.) *aff'd* 356 Fed. Appx. 521 (2d Cir. 2009). Plaintiff filed a charge of discrimination with the EEOC on or about April 28, 2007. (Compl. ¶ 141). Accordingly, any incidents that allegedly occurred before July 2, 2006 are time-barred.

Plaintiff's allegation that Gordon brought her to a strip club on April 4, 2003 is a discrete act that occurred outside the statutory period. (Compl. ¶ 63). Plaintiff's complaints concerning the conduct of her colleague Robert Bourque also occurred prior to July 2, 2006. For example, Plaintiff vaguely alleges that "in or about early 2005," she was subjected to "misogynistic comments" from Bourque, including a statement that "Kerry is like a dog, when you beat it enough it learns." (Compl. ¶¶ 80, 81). In "Spring 2006," Borque told a story about slapping a woman and told Plaintiff that she could "be next." (Compl. ¶¶ 85, 86). In "June 2006," Borque commented that Plaintiff was "about as smart as this chair that I am sitting on." (Compl. ¶ 87). Plaintiff allegedly complained to Gordon and Messina about Bourque's behavior a few days after the "chair" comment, and complained again to Gordon about being removed from the Front Point Partners account in September 2006. (Compl. ¶¶ 88, 97-99). All such discrete events are barred by the statute of limitations and therefore cannot be relied upon to support Plaintiff's Title VII claims.[3]

[3] Plaintiff's attempt to lump all of her allegations together into one continuing "hostile work environment" cannot save the untimely allegations. Like all Title VII claims, hostile work environment claims "are subject to the relevant statute of limitations." Benardo, 2011 WL 2565489, at *4. Courts permit an exception to the 300 day period where a plaintiff has demonstrated a continuing violation. "[B]ecause hostile work environment by its nature involves repeated conduct ... a court looks to the entire time frame when the hostile environment existed, as long as one act contributing to the claim occurred within the 300 day filing period." Benardo, at *4. However, "[f]or discrete acts of discrimination, the 'continuing violation' doctrine is inapplicable, and the 300 days is measured from the date when the discriminatory act – the

## B. Plaintiff Has Not Stated A Plausible Title VII Claim

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the Court must accept well-pleaded facts as true, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Garber v. Legg Mason, Inc., 347 Fed. Appx. 665, 670 (2d Cir. 2009). "Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 191 (2d Cir. 2010).

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court affirmed that Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949. A complaint has the requisite "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "a formulaic recitation of a cause of action's elements" will not suffice to "nudge [a plaintiff's] claims across the line from conceivable to plausible." Twombly at 547, Iqbal at 1951.

The Court in Iqbal set out an approach to the complaint for the district court, in which the wheat (factual claims) is separated from the chaff (conclusory allegations):

---

failure to hire or promote, the termination – occurred." Benardo, at *4. See also Gorokhovsky v. City of New York, 10 Civ. 8848, 2011 WL 2019423 (S.D.N.Y. May 19, 2011) (Sand, J.) ("a plaintiff may not recover for 'discrete acts of discrimination that occur outside the statutory time period,' even when they are related to acts allegedly in timely filed charges") (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002)). The Second Circuit has clarified that "while this theory may apply to cases involving specific discriminatory policies or mechanisms, ... multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Hongyan Lu v. Chase Investment Svcs. Corp., 412 Fed. Appx. 413, 2011 WL 782226 (2d Cir. 2011) (internal quotation omitted). In this case, no discriminatory policy, mechanism or even pattern of disparate treatment of women is alleged. Therefore, events occurring before July 2, 2006 are not actionable and may not give rise to a Title VII claim.

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Id. at 1950. Applying this framework to the facts set forth in Plaintiff's complaint, it is apparent that Plaintiff's complaint is rife with conclusory allegations that simply do not pass muster under Iqbal. For example, Plaintiff alleges that she "was subjected to differential treatment … based on her sex," and "derogatory comments based on her sex," as well as "negative comments and innuendo based on her filing with the EEOC." (Compl. ¶¶ 36, 145, 146). Such bare assertions and conclusory statements "amount to nothing more than a formulaic recitation of the elements" and need not be considered true. See Iqbal, 129 S. Ct. at 1949, 1951 (claims of racially invidious policy with John Ashcroft as "principal architect" were conclusory and not assumed to be true). To the extent that there remain any well-pleaded, non-conclusory factual allegations in the complaint the operative inquiry is "whether they plausibly give rise to an entitlement to relief." See Iqbal, 129 S. Ct. at 1950.

### 1. Disparate Treatment

It is "axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." Figueroa v. City of New York, 118 Fed. Appx. 524, 526 (2d Cir. 2004) (emphasis added) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). See also Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) ("The *sine qua non* of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be *because of sex*'") (quoting Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001). As this Court has noted,

> [t]his is a variation on a common (and patently defective) pleading technique in cases brought under federal and local antidiscrimination statutes: 'I am (fill in the

> protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class).' As the Second Circuit and other courts of appeal have repeatedly stated, this is a false syllogism, one that does not support any inference of discrimination. … Where there is no reason to suspect that an employer's actions had anything to do with membership in a protected class, other than plaintiff's bald assertion that she was a member of such a class, and the people who made decisions about her employment were not, no claim is stated.

Ochei v. The Mary Manning Walsh Nursing Home Company, Inc., 10 Civ. 2548, 2011 WL 744738, at *3 (S.D.N.Y. March 1, 2011) (McMahon, J.).

Plaintiff's alleged discriminatory acts do not support the conclusion that she was treated differently because of her gender. The conduct Plaintiff alleges – playing "wouldja, wouldja?," monitoring Plaintiff's attendance at the office, Plaintiff's co-worker comparing Plaintiff's intelligence to that of a chair (see Compl. ¶¶ 49, 87, 101) – are gender-neutral. Similarly, the Complaint sets out the following allegations which contain no direct evidence of gender discrimination towards Plaintiff, nor do they support the inference of plausible discrimination because of Plaintiff's gender:

- Plaintiff claims that she was subject to scrutiny by management. (Compl. ¶ 100)
- Borque allegedly begin trading on one of Plaintiff's accounts. (Compl. ¶ 107)
- Plaintiff's commission was allegedly incorrectly reduced. (Compl. ¶ 148)
- Plaintiff's seat was allegedly moved to a different spot on the trading floor. (Compl. ¶ 151)
- Gordon "refused to acknowledge Regan or greet a client" at a golf outing. (Compl. ¶ 158)

Moreover, none of Plaintiff's allegations amount to actionable adverse employment action, as required by the statute for a discrimination claim. Benardo, 2011 WL 2565489 at *3. To be "materially adverse," an action "'must be more disruptive than a mere inconvenience.'" White v. Fuji Photo Film USA, Inc., 434 F. Supp. 2d 144, 152 (S.D.N.Y. 2006)

(quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). See also Benardo, 2011 WL 2565489, at *3 ("[a]n 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits'") (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Plaintiff does not allege that her employment status was changed by the requisite "hiring, firing, or fail[ure] to promote." Nor does she allege that her compensation, title, responsibilities or benefits changed one iota. Although Plaintiff alleges that her transfer later to Benchmark's Jersey City office was an adverse action, that particular allegation is set forth to support her claim of retaliation subsequent to her filing of the EEOC charge, and was not mentioned in the EEOC charge itself.[4] Plaintiff does not allege any material adverse action taken against her prior to her filing of the EEOC charge. This alone requires dismissal of Plaintiff's Title VII discrimination claim. See Patane v. Clark, 508 F. 3d 106 (2d Cir. 2007) (affirming dismissal of discrimination claim for failure to plead gender-based adverse employment action where the only specific employment actions that may have qualified as materially adverse were characterized by the complaint as retaliatory).

---

[4] Plaintiff refers to her EEOC charge in the Complaint at paragraphs 5, 141, 142, 155 and 164. Therefore, Defendants believe that document has been incorporated by reference into the Complaint and may be discussed in this Motion to Dismiss without conversion to a Motion for Summary Judgment. "A complaint is deemed to include writings and documents attached to it, referenced in it, or integral to it." Moultrie v. VIP Health Care Servs., 08-CV-0457, 2009 WL 750219, at *2 (E.D.N.Y. March 19, 2009) (citing Chambers v. Time Warner, Inc., 282 F. 3d 147, 152-153 (2d Cir. 2002) and Fed. R. Civ. P. 10(c)). See also Reyes v. City University of New York, 06 Civ. 3639, 2007 WL 2186961, at *2 (July 26, 2007) (McMahon, J.) (noting that, on motion to dismiss, it was proper for Defendant to provide the court with a document the plaintiff relied upon in the complaint). A copy of Plaintiff's EEOC charge is attached to the accompanying Affirmation of Katherine B. Harrison, dated August 19, 2011 (the "Harrison Aff.") as Exhibit A.

Finally, Plaintiff's disparate treatment claim should be dismissed for failure to exhaust her administrative remedies. Plaintiff's EEOC charge made no reference whatsoever to disparate treatment and complained only of sexual harassment at Benchmark. (See Exhibit A to the Harrison Aff.). Plaintiff should not now be allowed to introduce new unrelated claims of disparate treatment. See Canales-Jacobs v. New York State Office of Court Admin., 640 F. Supp. 2d 482, 503 (S.D.N.Y. 2009) (McMahon, J.) (internal quotations omitted) (holding that only claims explicitly raised, or reasonably related to those raised, before administrative agencies are properly before the Court and dismissing plaintiff's new claims of discrimination, noting that "sexual harassment is a particular form of gender discrimination; it does not encompass any and all gender discrimination that may have taken place, and plaintiff's charge does not mention that she was treated differently than anyone else based on her gender"); Senno v. Elmsford Union Free School Dist., 08 Civ. 2156, 2011 WL 3296100 (S.D.N.Y. July 28, 2011) (Wood, J.) (dismissing claim of gender discrimination and noting that "although the category of protected class – sex – is the same in the EEOC charge and the Complaint, failure to remedy sexual harassment and discriminatory discipline are entirely different theories of liability, predicated on totally different acts") (internal quotation omitted); Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667, 675 (S.D.N.Y. 1995) (Leisure, J.) (where EEOC charge did not mention salary disparity as part of discriminatory treatment, it was not "reasonably related" to charge; the Court lacked jurisdiction to hear wage disparity claim).

**2. Hostile Work Environment**

Under Title VII, a hostile work environment "arises when the workplace becomes 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment.'" Benardo, 2011 WL 2565489 at *3 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1986)).

> To state a Title VII claim based on a sex-based hostile work environment, a plaintiff must plead facts that show that the complained of conduct: (1) is objectively severe or pervasive – that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment **because of the plaintiff's sex**.

Guarino v. St. John Fisher College, 321 Fed. Appx. 55, 57 (2d Cir. 2009) (emphasis in original) (internal quotation omitted). "It is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." Alfano v. Costello, 294 F. 3d 365, 374 (2d Cir. 2002). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998). See also Benardo, 2011 WL 2565489 at *6 ("Title VII is not a civility code") (citing Oncale).

Accordingly, Courts in this Circuit routinely dismiss claims where undesirable or inappropriate behavior was not based on sex. See, e.g., Guarino, 321 Fed. Appx. at 57 (although defendant "may have been acting in an unwelcome and inappropriate manner, no reasonable fact-finder could conclude that her behavior occurred because of her sex"); Figueroa v. City of New York, 118 Fed. Appx. 524, 526 (2d Cir. 2004) (affirming summary judgment in favor of defendant where "[w]ith respect to the offensive but gender-neutral conduct [plaintiff] pointed to, she offered only the conclusory statement that the harassment occurred because she is a woman. She failed to adduce evidence sufficient to link these acts to her gender or to the perpetrators' gender-based animus"); Williams v. Time Warner Inc., 09 Civ. 2962, 2010 WL 946970, at *5 (S.D.N.Y. March 3, 2010) (Sullivan, J.) (dismissing complaint where "[p]laintiff has alleged no facts rendering it plausible that the mistreatment she allegedly experienced was because of her

race or sex"); Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 746 F. Supp. 2d 575, 606 (S.D.N.Y. 2010) (McMahon, J.) ("the offensiveness of [receipt of pornography at work] is patent, but there is no evidence that [plaintiff] was singled out for the receipt of pornography" because of his membership in a protected class).

Plaintiff has failed to establish that "she was subjected to the [alleged] hostility because of her membership in a protected class." Brennan v. Metropolitan Opera Association, Inc., 192 F.3d 310, 318 (2d Cir. 1999). The "constant din" of "shouting, cursing, and sounds from pornographic videos" on the trading floor definitely were equally audible to male and female employees of Benchmark. (See Compl. ¶ 76). Plaintiff alleges that her male colleagues "discussed sexual acts," and used their computers to view and pass along "sexualized material" to one another and their clients, and not exclusively Plaintiff. (Compl. ¶¶ 49, 50, 53, 58). Plaintiff has thus alleged an environment that is "equally harsh for both men and women," which "does not constitute a hostile working environment under the civil rights statutes." Brennan, 192 F. 3d at 318. See also White v. Fuji Photo Film USA, 434 F. Supp. 2d 144 (S.D.N.Y. 2006) (McMahon, J.) ("[a]n environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes.") (citation omitted).

Plaintiff further complains that she was subject to "intense and unprecedented scrutiny," was "monitor[ed]" at work, and that her colleagues "ostracized," "ignored," "laugh[ed at]" and "mocked" her. (Compl. ¶¶ 100, 101, 124, 126, 143, 144). Even accepting Plaintiff's factual allegations as true, the conduct alleged does not constitute adverse employment action, much less an actionable hostile work environment.

> [T]o be actionably hostile, a workplace must be rendered hostile by workplace-altering conduct attributable to some statutorily prohibited factor … not simply incivility or nastiness. When we say that Title VII, and corresponding state and local laws, are not a civility code … we are saying even if mean-spiritedness or

> bullying render a workplace environment abusive, there is no violation of the law unless that mean-spiritedness or bullying is rooted in [] discrimination. An abusive workplace that is not discriminatory does not violate the law.

Mendez, 746 F. Supp. 2d at 606. See also Fleming v. MaxMara USA, Inc., 371 F. Appx. 115, 119 (2d Cir. 2010) (criticism, exclusion from meetings, and refusal to answer work-related questions do not support finding of hostile work environment); Nugent v. St. Lukes-Roosevelt Hosp. Center, 303 Fed. Appx. 943, 945 (2d Cir. 2008) (derogatory language, mockery and scrutiny insufficient to constitute hostile work environment); Demoret v. Zegarelli, 451 F. 3d 140, 150 (2d Cir. 2006) (monitoring and rudeness do not create sexually hostile work environment); Brennan, 192 F.3d at 318-319 (rudeness, "lewd banter," and "sexually provocative pictures" do not "create[] a pervasive atmosphere of intimidation, ridicule, and insult adequate to alter the terms of plaintiff's employment"); Castro v. New York City Bd. of Educ. Pers., 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. March 12, 1998) (Mukasey, J.) ("[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions").

As noted above, many of Plaintiff's allegations center on the behavior of her co-worker Robert Bourque. Bourque, it is alleged, commented on his married life by advising his male colleagues – not Plaintiff – "I got my bitch trained." (Compl. ¶ 56). Bourque also allegedly insulted Plaintiff, and pitched business to Plaintiff's account by "demean[ing Plaintiff's] skills and intelligence." (Compl. ¶¶ 80, 85, 86, 87, 109). See Sardina v. United Parcel Service, Inc., 254 Fed. Appx. 108, 110 (2d Cir. 2007) ("off-color comments including references to 'office bitches' … do not rise to the level of an objectively hostile work environment"). Even if the Bourque incidents are not time-barred, they reflect, at worst, non-actionable animosity between Plaintiff and her co-worker. Allegations that Plaintiff felt "upset and humiliated,"

without reason to infer a sex-based motivation on Bourque's part, are "insufficient to survive a motion to dismiss." McKenzie v. Gibson, 07 Civ. 6714, 2008 WL 3914837, at *3 (S.D.N.Y. Aug. 25, 2008) (Pauley, J.). See also Mendez, 746 F. Supp. 2d at 606 ("Ridicule and harassment were unquestionable pervasive, but only a handful of incidents over a period of four years could even arguably be attributed to plaintiff's protected status"); Stepheny v. Brooklyn Hebrew School for Special Children, 356 F. Supp. 2d 248, 262 (E.D.N.Y. 2005) ("Title VII prohibits discrimination; it is not a shield for harsh treatment at" work); Williams v. New York City Dep't of Sanitation, 00 Civ. 7371, 2001 WL 1154627, at *15 (S.D.N.Y. Sept. 28, 2001) (Peck, Mag. J.) ("Unfair treatment or personal animosity is not actionable; only discrimination is"). Plaintiff's factual allegations "show workplace difficulties entirely consistent with ... non-gender-based personality disputes – disputes that are plainly not actionable under statutes intended to root out discrimination." Williams v. Time Warner, 2010 WL 946970 at *4. Plaintiff "cannot turn a personal feud into a sex discrimination case." Stepheny, 356 F. Supp. 2d at 262 (citation omitted).

**3. Retaliation**

"To prevail on a Title VII retaliation claim, Plaintiff must show (1) participation in a protected activity known to Defendants, (2) an employment action disadvantaging Plaintiff, and (3) a causal connection between the protected activity and the employment action." Williams v. Time Warner Inc., 2010 WL 846970, at *4 (S.D.N.Y. March 3, 2010). Plaintiff fails to demonstrate the requisite causal connection between her filing the EEOC charge and any adverse action taken by Benchmark.

As is discussed supra, "[a]n 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Benardo, 2011

WL 2565489 at *3 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998)). On May 31, 2007, Plaintiff allegedly told Gordon that she believed Benchmark was retaliating against her for filing with the EEOC, noting her ongoing computer problems and her transfer to the Jersey City office. (Compl. ¶ 155, 177). Computer problems do not constitute adverse employment action. See Ballard v. Children's Aid Society, 09 Civ. 5263, 2011 WL 1664980, at *7 (S.D.N.Y. April 28, 2011) (Marrero, J.) (plaintiff's assignment to office without computer access was insufficient to demonstrate retaliation). Nor does Plaintiff sufficiently allege that her transfer to Jersey City resulted in any "significant change in" her "employment status," such as "significantly different responsibilities" or "change in benefits." Benardo at *3. Based on the allegations, it appears that the only "significant change" was the location. A job transfer, in and of itself, is not an adverse action. See, e.g., Parekh v. Swissport Cargo Services, CV-08-1994, 2009 WL 290465 (E.D.N.Y. Feb. 5, 2009). Nor do the office conditions complained of by Plaintiff qualify as adverse employment action. See, e.g., Stoddard v. Eastman Kodak Company, 309 Fed. Appx. 475, 479 (2d Cir. 2009) ("harsh criticism by her boss, and inadequate office supplies and space, do not constitute adverse employment actions").

Even if the transfer were considered an "adverse employment action" for purposes of Title VII, Plaintiff failed to allege any facts to plausibly suggest that this action was taken on the basis of her gender. Parekh, 2009 WL 290465 at *5 (granting motion to dismiss complaint where "complaints concerning unfair disciplinary action [and] workplace transfer … contain no suggestion of hostility or offensiveness" based on plaintiff's membership in a protected group).

In addition, Plaintiff has failed to allege a direct causal connection between her filing a charge with the EEOC on or about April 28, 2007, and her transfer to Benchmark's

Jersey City office on September 13, 2007 – five months later. Thus, she must establish a causal connection indirectly "by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct." Nugent v. St. Lukes-Roosevelt Hosp. Center, 05 Civ. 5109, 2007 WL 1149979 (S.D.N.Y. April 18, 2007) (Francis, Mag. J.), *aff'd* 303 Fed. Appx. 943 (2d Cir. 2008). Plaintiff has not alleged that other female employees at Benchmark complained about sex-based discrimination. "To the extent that she relies on the temporal proximity between these two events as circumstantial evidence of causation, that, standing alone, is insufficient." Dixon v. International Federation of Accountants, 416 Fed. Appx. 107, 109 (2d Cir. 2011). See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (the two events must be "very close" and a proximity of three months or more is insufficient); Mazurkiewicz v. New York City Health and Hospitals Corp., 09 Civ. 5692, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) ( "[t]he Second Circuit often utilizes a two month window to determine whether the temporal connection between the protected activity and alleged retaliation is sufficiently close or too attenuated") (quotation omitted); Woods v. Enlarged City School Dist. of Newburgh, 473 F. Supp. 2d 498, 529 (S.D.N.Y. 2007) (Conner, J.) *aff'd* 288 Fed. Appx. 757 (2d Cir. 2008) (five month interval between the complaint of discrimination and termination "precludes a finding of causal connection … based on temporal proximity" and noting that "three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit an inference of causation") (internal quotation omitted).

Plaintiff also alleges that, in July 2008, approximately ten months after her job transfer, she was "constructively discharged" from Benchmark. (Compl. ¶ 221). Actual constructive discharge qualifies as adverse employment action under Title VII; Lee v. Sony

BMG Music Entertainment, Inc., 07 Civ. 6733, 2010 WL 743948 (S.D.N.Y. March 3, 2010) (McMahon, J.), however, Plaintiff's "constructive discharge" claim is itself faulty. In order to support such a claim, Plaintiff must allege facts demonstrating that Defendants "deliberately made her working conditions so intolerable that she was forced into an involuntary resignation." Pugni v. Reader's Digest Association, Inc., 05 Civ. 8026, 2007 WL 1087183 (S.D.N.Y. April 9, 2007) (McMahon, J.). Plaintiff must "demonstrate that the employer's actions were deliberate [and] taken for the purpose of forcing plaintiff to resign." Lee, 2010 WL 743948 at *9. "[S]uch a claim is not made out 'simply through evidence that an employee was dissatisfied with the nature of his assignments [or that] the employee's working conditions were difficult or unpleasant.'" Costa v. City of New York, 546 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Kaplan, J.) (quoting Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993)). See also Lee, 2010 WL 743948 at *11 ("constructive discharge cannot be proven merely by evidence that an employee preferred not to continue working for that employer") (internal quotation omitted).

Plaintiff has failed to allege that her transfer to Benchmark's Jersey City office created working conditions so "intolerable" as to force her to resign. By her own allegations, this transfer was to accommodate Plaintiff following her complaints about the New York office. (Compl. ¶ 176). Plaintiff was provided with office furnishings, including a computer, with which to conduct her trades and keep in contact with clients. (Compl. ¶188). Her job responsibilities and duties did not change. While Plaintiff "was dissatisfied with" Benchmark's response to her complaints, even if her "working conditions were actually intolerable, she has failed to adduce any evidence that [Benchmark] deliberately made them so in order to force her to resign." Pugni at *26 (dismissing constructive discharge complaint). See also Payne v. Malemathew, 09-CV-1634, 2011 WL 3043920, at *4 (S.D.N.Y. July 22, 2011) (Seibel, J.)

(dismissing retaliation claim where plaintiff "failed to provide facts sufficient to raise an inference that the adverse action was caused by retaliatory animus"); Durant v. A.C.S. State and Local Solutions, Inc., 460 F. Supp. 2d 492, 499 (S.D.N.Y. 2006) (McMahon, J.) (dismissing constructive discharge claim where "it was unreasonable for [plaintiff] to conclude that she needed to resign").

## POINT II.

## THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER THE NEW YORK CITY CODE

Counts three and four of Plaintiff's complaint allege gender discrimination and retaliation in violation of the NYC Code §8-101 et. seq. Count five of Plaintiff's complaint alleges that Gordon and Messina violated the NYC Code §8-107(6) by aiding and abetting discrimination and retaliation.

"The focus of this statute is whether the plaintiff can show that she was treated less well than other employees because of her protected status." Ochei, 2011 WL 744738 at *4. Like Title VII, the NYC Code is not to be "construed as a general civility code. If the bases for the alleged hostile work environment are nothing more than petty slights or trivial inconveniences, then the plaintiff's" claim must fail as a matter of law. Id. As in Title VII claims, NYC Code discrimination claims "require allegations tending to show adverse employment action." Bermudez v. City of New York, 10 Civ. 11622, 2011 WL 1218406, at *29 (S.D.N.Y. March 25, 2011) (McMahon, J.) (internal citation omitted). As discussed supra, Plaintiff's complaint "fails to allege facts tending to show that the harassment came about" because of her gender. Ochei at *5 (dismissing NYC Code hostile work environment claim where plaintiff's complaint was made "in the syllogistic manner that has already been exposed as legally insufficient"). Nor has Plaintiff alleged any actionable adverse employment action. Thus, for

the reasons her Title VII claims should be dismissed, her NYC Code claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A. The NYC Code Claims Must Be Dismissed Because Plaintiff Cannot Demonstrate That The Alleged Conduct Had An Impact In New York City

It is well-settled that "the [NYC Code] applies only to conduct occurring in New York City." Benardo, 2011 WL 2565489, at *6. Plaintiff "may invoke the protection of the [NYC Code] only by proving that the discriminatory act or acts took place within" New York City. Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 184 (S.D.N.Y. 2007) (Wood, J.). "In addition to requiring that the act have taken place within New York, courts interpreting the City Code have consistently required that the discriminatory act or acts have had an *impact* in New York City." Id. citing Wahlstrom v. Metro-North Commuter R.R. Co., 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) (Leisure, J.) (the NYC Code "only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office"). "[T]he fact that certain acts leading to discrimination may occur in New York City will not necessarily give rise to a claim under the" NYC Code. Benardo, 2011 WL 2565489, at *6 (quoting Salvatore v. KLM Royal Dutch Airlines, No. 98 Civ. 2450, 1999 WL 796172 (S.D.N.Y. Sept. 30, 1999) (dismissing NYC Code claims where plaintiffs worked primarily outside of New York City)). Indeed, "several courts have dismissed claims under the [Code] when the allegedly discriminatory decision to terminate the employee was made at a corporation's New York City offices, but the employee worked outside the city limits." Pearce, 528 F. Supp. 2d at 184, citing Lucas v. Pathfinder's Pers., Inc., 01 Civ. 2252, 2002 WL 986641, at *1 (S.D.N.Y. May 13, 2002) (Jones, J.); Duffy v. Drake Beam Morin, 96 Civ. 5606, 1998 WL 252063, at *12 (S.D.N.Y. May

19, 1998) (Mukasey, J.) (decision made in New York City office to fire employees did not establish NYC Code violation when affected employees did not work in New York City); Shah v. Wilco Systems, Inc., 27 A.D.3d 169, 806 N.Y.S.2d 553 (1st Dep't 2005) ("the locus of the decision to terminate her is of no moment. What is significant is where the impact is felt. Thus, even is the termination decision had been made in New York City, the [NYC Code] would not apply since its impact on her occurred in New Jersey, not within the five boroughs").

Here, Plaintiff cagily alleges that she resided at all relevant times in "New York City and/or New Jersey." (Compl. ¶ 7). In her EEOC charge, Plaintiff listed her address as Union City, New Jersey. (See Harrison Aff. Exhibit A) Her retaliation claim rests almost entirely on her transfer to Benchmark's Jersey City office, where she worked for nearly ten months before she was supposedly "constructively discharged." Even if the decision to transfer Plaintiff was made at Benchmark's Manhattan office, Plaintiff cannot demonstrate that such conduct had the requisite "impact in New York City," because Plaintiff both worked and resided in New Jersey. Pearce, 528 F. Supp. 2d at 184.

**B. Plaintiff Fails To Plead Facts Demonstrating That Gordon And Messina Aided And Abetted NYCHRL Violations**

Plaintiff also fails to plead facts sufficient to support her allegation that Gordon and Messina aided and abetted violations of the NYC Code. Individuals may be held liable for aiding and abetting NYC Code violations if they "participate[] directly in discriminatory acts alleged by the Plaintiff." Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd., 10 Civ. 2249, 2011 WL 666187, at *10 (S.D.N.Y. Feb. 9, 2011) (Swain, J.). Aiding and abetting liability requires a showing that the aider and abettor's participation was "purposeful." Fried v. LVI Services, Inc., 10 Civ. 9308, 2011 WL 2119748 (S.D.N.Y. May 23, 2011) (Rakoff, J.).

Plaintiff alleges that both Gordon and Messina played "wouldja, wouldja?" and used binoculars to watch women in a college dorm, while Gordon joked that Benchmark should have been called "Voyeur Capital." (Compl. ¶¶ 47, 48, 57). Plaintiff further alleges that Gordon organized trips to strip clubs for himself and other Benchmark employees – including, on at least one occasion, Plaintiff – and then "bragged" about it the next day. (Compl. ¶¶ 59, 63). Gordon allegedly "criticized" Plaintiff for not being "flirtatious" enough with FPP representatives on a business trip to Dallas. (Compl. ¶¶ 91, 92). Gordon and Messina "upon information and belief" did not discipline Bourque for comparing Plaintiff's intelligence with that of a chair. (Compl. ¶¶ 87, 89, 90). Plaintiff further alleges that both Gordon and Messina subjected her to "scrutiny," and that Messina permitted her to make telephone calls from his office when the "constant din" in on the trading floor made it "difficult for Regan to make and receive phone calls." (Compl. ¶¶ 76, 77, 100, 101). These instances simply do not describe "purposeful" participation in any discrimination, hostility, or retaliation directed at Plaintiff. Accordingly, Plaintiff's aiding and abetting claims should be dismissed.

### C. Plaintiff's NYC Code Claims are Time-Barred

Plaintiff's NYC Code claims are also time-barred. Claims under the NYC Code are subject to a three-year statute of limitations from the date the complaint is filed. See Bermudez v. City of New York, 10 Civ. 1162, 2011 WL 1218406 (March 25, 2011) (McMahon, J.); Jiminez v. City of New York, 605 F. Supp. 2d 485 (S.D.N.Y. 2009) (McMahon, J.) (events occurring more than three years prior to filing suit are time barred by NYC Code); Pilgrim v. McGraw-Hill Companies, Inc., 599 F. Supp. 2d 462 (S.D.N.Y. 2009) (barring claims that arose more than three years prior to filing suit) (McMahon, J.); Whaley v. City University of New York, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (McMahon, J.) (same). Application of that rule

here would bar virtually all of Plaintiff's alleged discriminatory and retaliatory events, which occurred before June 30, 2008, three years before she filed the instant Complaint.

Defendants are mindful that, "[a]lthough the Second Circuit has yet to opine definitively on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims under [the NYC Code], numerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under [the NYC code] is tolled during the period in which a complaint is filed with the EEOC." Wilson v. New York City Police Dep't., 09 Civ. 2632, 2011 WL 1215031 (S.D.N.Y. Feb. 4, 2011) (Pitman, J.) (because there were 317 days between filing of EEOC charge and receipt of right-to-sue letter, 317 days was excluded from the limitations period). See also Siddiqi v. N.Y.C. Health & Hosp. Corp., 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008) (McMahon, J.) ("The statute of limitations is tolled during the period in which a complaint is filed with the EEOC").

However, we believe in this case there is no reason to allow the EEOC charge period of almost four years (April 2007 to March 2011 (Compl. ¶¶ 5c, 141)) to toll the three-year NY Code statute of limitations period. Plaintiff's claim of aiding and abetting against Gordon and Messina is not available under Title VII ("Title VII does not impose individual liability," Williams v. Time Warner Inc., 2010 WL 846970 at *3), and was not part of Plaintiff's EEOC charge. Plaintiff could have pursued that claim through the New York State Division of Human Rights at any point over the last eight years and chose not to. All of the usual policy reasons behind statutes of limitations – protection against stale evidence and failure of witness recollection as well as provision of finality with respect to litigation and liability, particularly for individuals – argue in favor of applying the NYC Code's three-year statute of limitations here from the date the Complaint was filed, without allowing any tolling.

## CONCLUSION

For the reasons discussed above, Defendants Benchmark, Gordon and Messina respectfully request that the Complaint be dismissed in its entirety.

Dated: New York, New York
August 19, 2011

Respectfully submitted,

PADUANO & WEINTRAUB LLP

By: [signature]
Anthony Paduano
Katherine B. Harrison
Jillian A. Lazar
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020

Attorneys for Defendants
The Benchmark Company LLC,
Adam Gordon, and
Richard Messina