Robert L. Levy (RL-1633)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERRY ANNE REGAN,<br><br>Plaintiff,<br><br>-against-<br><br>THE BENCHMARK COMPANY LLC, TRINET GROUP, INC., ADAM GORDON, and RICHARD MESSINA<br><br>Defendants. | 11 CIV. 4511 (CM) |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES....................i

PRELIMINARY STATEMENT....................1

FACTS....................2

LEGAL STANDARD ON A MOTION TO DISMISS....................2

ARGUMENT....................3

I. REGAN'S TITLE VII CLAIMS SHOULD NOT BE DISMISSED....................3

A. There is No Legal Basis on Which to Dismiss Regan's Title VII Claims....................3

1. Regan Has Sufficiently Pled That She Was Subjected to Disparate Treatment by Benchmark Based on Her Sex....................4

2. Regan Has Sufficiently Pled Her Hostile Work Environment Claim....................7

3. Regan Has Sufficiently Pled She Was Retaliated Against by the Benchmark Defendants....................10

B. Regan's Hostile Environment Claim Is Not Time-Barred....................12

C. Regan Has Exhausted Her Administrative Remedies....................14

II. REGAN'S NEW YORK CITY LAW CLAIMS SHOULD NOT BE DISMISSED....................16

A. Regan Has Adequately Plead Claims for Relief Against Benchmark and Gordon and Messina Under New York City Law....................16

B. The Actionable Conduct Alleged Occurred and Had an Impact in New York City....................18

C. Regan's Claims Under the New York City Law are Not Time Barred....................19

III. LEAVE TO REPLEAD .......... 21

CONCLUSION .......... 22

## TABLE OF AUTHORITIES

**CASES:**


*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)....................3, 7

*ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007)....................2

*Barbosa Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y.)....................3

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)....................3, 7

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 70-71 (2006)....................4

*Butts v. N.Y. Dep't of Housing Preservation & Development*, 990 F.2d 1397, 1401 (2d Cir. 1993)....................16

*EEOC v. Local 638*, 733 F.2d 1172, 1180 (2d Cir. 1985).................... 19

*Erickson v. Pardus*, 551 U.S. 89, 93-94, (2007)....................2

*Fitzgerald v. Henderson*, 251 F.3d 345, 359, 362 (2d Cir. 2001)....................13, 14, 16

*Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 678 (S.D.N.Y. 2009)....................3

*Hubbard v. Total Communs. Inc.*, 347 Fed. Apps. 679, 681 (2d Cir. 2009)....................11

*Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)....................21

*Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)....................2

*Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)....................13

*Martinez-Tolentino v. Buffalo State College*, 277 A.D.2d 899, 715 N.Y.S.2d 554, 555 (4th Dep't 2000)....................20

*Milani v. Int'l Bus. Machines Corp., Inc.* 322 F.Supp.2d 434, 451 (S.D.N.Y. 2004)....................20

*Morales v. Long Island R.R. Co.*,
2010 Dist. Lexis 47926 (S.D.N.Y. 2010)....................7

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)....................12

*Nyame v. Bronx Lebanon Hosp. Ctr.*,
2010 U.S. Dist. Lexis 33949 at *14 (S.D.N.Y. 2010)....................3, 21

*Oneida Indian Nation of New York City v. City of Sherrill*,
337 F.3d 139, 168 (2d Cir. 2003)....................21

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007)....................9

*Patrolman's Benevolent Association of the City of New York v. City of New York*,
310 F.3d 43, 51 (2d Cir. 2002)....................4

*Pennsylvania Police v. Suders*, 542 U.S. 129 (2004)....................4

*Pucino v. Verizon Comm., Inc.*, 618 F.3d 112, 117-20 (2d Cir. 2010)....................9

*Quinones v. Kohler Mix Specialities, LLC*,
2010 U.S Dist Lexis 42779, at *15-16....................11

*Raniola v. Bratton*, 243 F.3d 610, 621-22 (2d Cir. 2001)....................6

*Rolon v. Ward*, 345 Fed.Appx. 608, 609 (2d Cir. 2009)....................5

*Selmanovic v. NYSE Group, Inc.*,
2007 U.S. Dist. LEXIS 94963, at *11 (S.D.N.Y. 2007)....................17, 19

*Siddiqi v. New York City Health & Hosp. Corp.*,
572 F. Supp. 2d 353 373 (S.D.N.Y. 2008) (McMahon, J.)....................20

*Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)....................2

*Stalter v. Board of Cooperative Educational Services of Rockland County*,
235 F.Supp.2d 323 (S.D.N.Y. 2002) (McMahon, J.) ....................13

*Sullivan v. Newburgh Enlarged School District*,
281 F. Supp. 2d 689, 704-05 (S.D.N.Y. 2003) (McMahon, J.)....................9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 505, 515 (2002)....................2, 3, 7

*Williams v. New York City Housing Auth.*, 61 A.D.2d 62 (1st Dep't 2009)....................................16

*Wilson v. New York City Police Dep't*,
2011 U.S. Dist. LEXIS 38995 (S.D.N.Y. 2011).........................................................20

*Zustovich v. Harvard Maintenance, Inc., et al.*,
2009 U.S. Dist. LEXIS 22640..........................................................................................15

**MISCELLANEOUS:**

N.Y. City Admin. Code § 8-502(d)...........................................................................19-20

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE BENCHMARK DEFENDANTS' MOTION TO DISMISS

## PRELIMINARY STATEMENT

This case is about the severe sexual harassment, discrimination and retaliation to which, Kerry Anne Regan, a young female stock trader was subjected by her employer, The Benchmark Company LLC ("Benchmark"), as she tried to build a career in the financial services industry. Regan started a promising career at Benchmark only to have her professional aspirations frustrated and her sense of self-worth and well-being undermined by the barrage of harassing, discriminatory and retaliatory actions to which she was subjected over the course of her employment at Benchmark.

Regan's Complaint sets forth in substantial illustrative detail the rampant harassment and unequal treatment to which Regan was subjected due to her sex by Benchmark and its principals Adam Gordon and Richard Messina (collectively, the "Benchmark Defendants"). These widespread acts of intentional discrimination and harassment were of such a routine and generalized nature that they effectively became Benchmark's standard operating procedure. When Regan raised concerns about the unlawful treatment to which she was being subjected, the Benchmark Defendants, and their co-employer, Gevity HR Inc. ("Gevity"),[1] failed to investigate her complaints. Rather, the Benchmark Defendants, with the acquiescence of Gevity, aggressively retaliated against Regan by intensifying their abusive and discriminatory treatment. The Complaint describes how the Benchmark Defendants' discriminatory and retaliatory actions compromised Regan's accounts and client relationships such that Regan had difficulty earning a livelihood. The Complaint further describes how when Regan continued to insist on fair and

---

[1] Gevity is sued herein as defendant, Trinet Group, LLC ("Trinet"), its successor in interest. (Complaint ¶¶ 8, 13-18).

equal treatment in the workplace, the Benchmark Defendants punished Regan by banishing her from Benchmark's New York trading floor and moving her to an isolated, ill-equipped office in New Jersey from where it was virtually impossible for Regan to effectively service her existing business or build new client relationships. These workplace conditions undermined Regan's professional endeavors and compromised her health and well-being so as to constitute a constructive discharge of her employment.

The events detailed in the Complaint call out for judicial redress. The Benchmark Defendants' motion to dismiss is baseless and should be denied.

## FACTS

For a statement of the facts in this case, plaintiff relies on her detailed Complaint.

## LEGAL STANDARD ON MOTION TO DISMISS

Motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (at the Rule 12(b)(6) stage, the issue is not whether a plaintiff ultimately is likely to prevail, but whether the plaintiff is entitled to offer evidence to support the claims.) The court must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94, (2007) (*per curiam*), and "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Avenue Delicatessen Inc., 496* F.3d 229, 237 (2d Cir. 2007). A plaintiff alleging employment discrimination, "need not plead a prima facie case of discrimination." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 505, 515 (2002). Rather, the pleading requirement is satisfied by factual allegations that "raise a right to relief above the speculative level." *ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007). Ultimately, the

District Court must assess the "plausibility" of the connection between the facts alleged and the relief claimed in deciding a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

The Benchmark Defendants' reliance on *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) as establishing the appropriate standard for this motion is overstated and misplaced. Courts have "repeatedly found" that *Iqbal*, *Twombly* and *Swierkiewicz* should be read together in determining whether a plaintiff has pled a plausible case for employment discrimination. *See, e.g., Nyame v. Bronx Lebanon Hosp. Ctr.*, 2010 U.S. Dist. Lexis 33949 at *14 (S.D.N.Y. 2010) (citing cases). A pleading satisfies this standard where it is, "facially plausible" and gives "fair notice to the defendants of the basis for the claim." *Barbosa Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y.); *see also Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 678 (S.D.N.Y. 2009).

## **ARGUMENT**

## **POINT I**

## **REGAN'S TITLE VII CLAIMS SHOULD NOT BE DISMISSED**

In her detailed and specific 250 paragraph Complaint, Regan has more than met the pleading standard for stating viable claims of disparate treatment, retaliation and hostile work environment under Title VII.

### A. **There Is No Legal Basis on Which to Dismiss Regan's Title VII Claims**

In their motion, the Benchmark Defendants articulate no cognizable basis on which to dismiss Regan's Title VII claims. Rather, the Benchmark Defendants cobble together a series of ill-formed rationales for dismissal based on broad mischaracterizations of the breadth and import

of the facts in the Complaint and repeated misconstruction and misapplication of relevant legal principles. None of these arguments warrant dismissal of Regan's Title VII claims.

**1. Regan Has Sufficiently Pled That She Was <u>Subjected To Disparate Treatment Based On Her Sex</u>**

The Benchmark Defendants' claim that Regan's disparate treatment claims should be dismissed because Regan has failed to allege any adverse employment actions. This argument is based on a misstatement of the relevant law and mischaracterization of the relevant facts.

In order to allege an adverse employment action, a Title VII plaintiff must describe some materially significant disadvantage in the terms of her employment. It is well-settled that a change in work assignments can constitute an adverse employment action. *See Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 70-71 (2006). This can include a lateral transfer that does not result in a reduction of pay so long as the transfer alters the terms and conditions of employment in a "materially negative way." *Patrolman's Benevolent Association of the city of New York v. City of New York,* 310 F.3d 43, 51 (2d Cir. 2002). Moreover, the Supreme Court specifically has held Title VII encompasses employer liability for constructive discharge, including constructive discharge based on sexual harassment. *Pennsylvania Police v. Suders*, 542 U.S. 129 (2004)

Contrary to the Benchmark Defendants' claim, in her Complaint Regan identifies a series of adverse employment actions to which she was subjected by the Benchmark Defendants that materially disadvantaged her in the terms and conditions of her employment. These adverse employment actions include the following:

-- the reduction of Regan's monetary compensation through the reassignment of her

customer accounts to male traders and the reduction of her commissions (Complaint ¶¶ 91-99, 104-105, 107-114, 147-148);

-- interference with Regan's ability to develop and service business due to her transfer to a trading desk without operational computer equipment and the related denial of access to support services and travel and expense monies (Complaint ¶¶ 150, 152-154, 165-168); and

-- the virtually complete frustration of Regan's ability to develop and service business due to her banishment from Benchmark's main trading floor to an isolated, windowless, office space in New Jersey that lacked the rudimentary elements of a working office, including the lack the necessary electronic connections to Benchmark's trading operations, culminating in her constructive discharge (Complaint ¶¶ 170-223).

Moreover, whether a particular undesirable workplace action constitutes an adverse employment action is a heavily fact-specific, contextual determination not appropriately resolved at the motion to dismiss stage. *Rolon v. Ward,* 345 Fed.Appx. 608, 609 (2d Cir. 2009). Thus, the Benchmark Defendants are asking this Court to resolve disputed issues of fact in order to dismiss Regan's Title VII claim. This would be improper on a motion for summary judgment, much less on a motion pursuant to Rule 12(b)(6).

Similarly meritless is the Benchmark Defendants' related contention that Regan has failed to allege that she was discriminated against at Benchmark because of her sex. Throughout the Complaint, Regan specifically details numerous ways in which she was treated differently by the Benchmark Defendants "based on her sex". (*See, e.g.,* Complaint ¶¶ 36-42, 89, 91-98, 123, 145).

Regan also specifically alleges a significant quantum of additional hostile and abusive conduct to which she was personally and specifically subjected by Benchmark's male employees and owners because of her gender. This included Regan regularly being referred to as a "bitch", "ho" and "dog" by male co-workers, having her appearance and body parts graphically commented on by her male co-workers, being made the subject of the sexual fantasy game "wouldja, wouldja, wouldja", and being sent sexually explicit materials in emails, voicemails and documents, and being threatened with physical violence. (*See, e.g.,* Complaint ¶¶ 54, 67-69, 71, 72-73, 80-81, 86). Regan also alleges that, unlike male traders, she was required to flirt with male clients of Benchmark at company events and was sanctioned for failing to do so with sufficient vigor. (*See, e.g.,* Complaint ¶¶ 74, 91-99). Regan further alleges that defendants Gordon and Messina not only participated in the above-described conduct, but they reassigned many of Regan's most profitable accounts to male traders and permitted male traders to poach her accounts, practices otherwise not permitted at Benchmark. (*See. e.g.,* Complaint ¶¶ 42, 104-05, 107-111).

The overtly sex-based conduct and comments described above sufficiently cloak all of the adverse employment actions and the abusive and harassing conduct Regan was subjected to by the Benchmark Defendants in discriminatory bias. It is well-established that the existence of explicit gender-based comments and conduct provides an evidentiary basis for concluding that facially neutral conduct and comments are also discriminatory. *See Raniola v. Bratton,* 243 F.3d 610, 621-22 (2d Cir. 2001) (prior derogatory comments permit inference that further abusive treatment was motivated by same sex-based bias animating earlier comments). Accordingly, even the so-called "gender-neutral" actions identified by the Benchmark Defendants, (*see* Def. Mem. at 10), must be evaluated in this context. The mere fact that each and every instance of

discriminatory treatment to which Regan was subjected was not specifically described using the phrase "based on her sex" does not in any way de-gender these allegations so as to render Regan's discrimination claims speculative or non-plausible. *See, e.g. Morales v. Long Island RR Co.*, 2010 Dist. Lexis 47926 (S.D.N.Y. 2010) (denying motion to dismiss where complaint included specific factual allegations of events leading up to adverse employment action accompanied by merely conclusory allegations of discriminatory intent). Thus, while conduct such as the reassigning of customer accounts, the reduction and failure to pay commissions, and the banishment of an employee to an untenable off-site location all may be gender-neutral events in the abstract, on the facts alleged in the Complaint these acts constituted differential treatment based on sex. To conclude otherwise simply because Regan did not introduce each such action with the phrase "based on sex" would be unduly formulaic and run contrary to the pleading standard developed in *Iqbal*, *Twombly* and *Swierkiewicz.*

Ultimately, it is clear that the *sine qua non* of the Complaint is that Regan was singled out for adverse treatment and subjected to a hostile work environment because she, unlike almost all the other stock traders employed at Benchmark, was female. The Complaint puts the Benchmark Defendants on clear notice of this claim in a non-speculative and highly plausible way. Accordingly, this aspect of the Benchmark Defendants' motion must be denied.

**2. <u>Regan Has Sufficiently Pled Her Hostile Work Environment Claim</u>**

Similarly, Regan has sufficiently alleged that she was subjected to a hostile work environment at Benchmark because of her sex.

The Benchmark Defendants argue for dismissal of Regan's hostile work environment claim by again contending that Regan has failed to sufficiently plead that she was subjected to

abusive and hostile treatment in the workplace because of her sex. This argument had no merit in connection with Regan's disparate treatment claims, and is also unavailing here.

As set forth above, the Complaint is replete with numerous explicit and specific allegations of hostile, abusive and misogynistic conduct personally and specifically directed at Regan by her male co-workers because of her sex. *See, supra, Section I.A.1.* These well-pled illustrations of sex-based conduct that created a hostile work environment for Regan at Benchmark include the following factual allegations:

-- Regan regularly being referred to in misogynistic language (e.g. bitch, ho, dog) by male co-workers;

-- Regan having her appearance and body parts graphically commented on by her male co-workers and being made the subject of the game "wouldja, wouldja, wouldja";

-- Regan regularly being sent sexually explicit pornographic materials in emails, voicemails and other documents by her male co-workers;

-- Regan being threatened with physical violence by at least on email co-worker; and

-- Regan being required to flirt with male clients of Benchmark at company events and, thereafter, being sanctioned by Gordon for failing to do so with sufficient vigor.

(*See, e.g.,* Complaint ¶¶ 54, 67-69, 71, 72-73, 74, 80-81, 86, 91-99). In addition to these overtly sex-based aspects of the hostile work environment, Regan further alleges that defendants Gordon and Messina personally participated in much of the conduct described above, as well as exacerbated the hostile nature of the workplace by refusing to take remedial action against

Benchmark employees and retaliating against Regan when she brought the harassing and abusive conduct to their attention. (*See. e.g.,* Complaint ¶¶ 57-59, 74, 77-79, 88-90, 96-99, 100-111, 116-120, 142-147, 167-168).

Taken together, these factual allegations clearly meet the burden for stating a hostile work environment claim under Title VII. *See, e.g., Patane v. Clark,* 508 F.3d 106 (2d Cir. 2007) (vacating dismissal of hostile work environment claims based on allegations of excessive exposure to pornographic material in the workplace)*; cf. Pucino v. Verizon Comm., Inc.,* 618 F.3d 112, 117-20 (2d Cir. 2010) (denying summary judgment where plaintiffs were subjected to disparately harsh working conditions based on their sex, including unfavorable work assignments and failure to provide adequate workplace resources); *Sullivan v. Newburgh Enlarged School District,* 281 F. Supp. 2d 689, 704-05 (S.D.N.Y. 2003) (McMahon, J.) (allegations of continuous and concerted harassment sufficient to defeat motion for summary judgment).

In a secondary argument, the Benchmark Defendants blithely suggest that Regan's hostile work environment allegations can be reduced to a mere description of a personal feud between her and one male colleague, Robert Bourque. Def. Mem. at 15-16. This argument strains credulity and should be summarily rejected. It essentially rewrites Regan's Complaint by simply ignoring the overwhelming majority of the factual allegations underlying her hostile work environment claim. Whether or not Bourque's conduct, standing alone, created a hostile work environment grossly misses the point. It is the entirety of the relevant factual allegations taken as a whole that must be considered in analyzing the sufficiency of Regan's hostile work environment claim. By this metric, Regan's Complaint clearly states a claim under Title VII.

### 3. **Regan Has Sufficiently Pled She Was <u>Retaliated Against By The Benchmark Defendants</u>**

In the Complaint, Regan references no less than seven distinct moments in time in which she engaged in protected activity for Title VII purposes. (Complaint ¶¶ 88-89, 116-118, 123, 132-33, 141, 155, 169). Each and every act of protected activity alleged in the Complaint is causally linked to unlawful retaliatory conduct by the Benchmark Defendants. Regan's explicit pleading of retaliatory causality includes, but is not limited to, the following instances of retaliatory conduct:

-- excessive and unprecedented job scrutiny and reassignment of client accounts after Regan made complaints about discrimination to Gordon in September 2006 (Complaint ¶¶ 100-105);

-- escalation of hostile work environment and denial of commission payments and travel and expenses monies after Regan filed her initial EEOC charge (Complaint ¶¶ 142-150, 162-164);

-- transfer of Regan's workspace to a trading desk without operational computer equipment after Regan filed her EEOC charge (Complaint ¶¶ 151-154); and

-- banishment of Regan from Benchmark's main trading floor in New York City to a windowless and non-functional office space in New Jersey approximately one week after Benchmark received a supplemental affidavit that had been filed by Regan with the EEOC (Complaint ¶¶ 169-190).

These allegations, individually and collectively, set forth a cause of action for retaliation under Title VII.

The Benchmark Defendants advance two meritless arguments for dismissal of Regan's retaliation claim. First, the Benchmark Defendants contend that Regan has not alleged an actual adverse employment action in her Complaint. For all the reasons set forth in Section II.A.1., *supra*, this argument has no merit.

Second, the Benchmark Defendants argue that Regan's Title VII retaliation claims should be dismissed based on the erroneous contention that Regan's filing of a charge of discrimination with the EEOC in April 2007 is the sole act of protected activity upon which her retaliation claims can be based. *See* Def. Memo at 17-19. This argument not only misstates the facts alleged in the Complaint, it is simply wrong as a matter of law. It is well-established that protected activity extends well beyond the filing of a charge of discrimination with the EEOC and includes making the type of internal complaints repeatedly made by Regan to Gordon and Messina, and to Benchmark's co-employer, Gevity. *See Hubbard v. Total Communs. Inc.*, 347 Fed. Appx. 679, 681 (2d Cir. 2009) (noting that the Second Circuit has interpreted protected activity to include not only the filing of formal discrimination charges, but also informal protests of discriminatory employment practices); *see also Quinones v. Kohler Mix Specialities, LLC,* 2010 U.S Dist Lexis 42779, at *15-16 (internal complaint of discrimination constitutes protected activity). Thus, the Benchmark Defendants exclusive reliance on the filing of the April 2007 EEOC complaint is a false premise that should not be given weight by this Court.

In sum, the Benchmark Defendants seek dismissal of Regan's Title VII claims based on gross mischaracterizations of the allegations in the Complaint and a tortured analysis of applicable law. Accordingly, this aspect of the Benchmark Defendants' motion should be denied in its entirety.

## B. Regan's Hostile Work Environment Claim Is Not Time-Barred

Regan's claim under Title VII that she was subjected to a sex-based and retaliatory hostile work environment is timely and should not be dismissed.

The Benchmark Defendants argue for dismissal of the allegations underlying Regan's hostile work environment claim that did not occur within three hundred days of Regan's filing a charge of discrimination with the EEOC in April 2007. In advancing this argument, the Benchmark Defendants mistakenly characterize the factual allegations underlying Regan's hostile work environment claim as a series of discrete incidents of discrimination. This characterization is flawed. Rather, as pled in the Complaint, Regan's hostile work environment claims are comprised of a series of related incidents that evince a policy and practice of discrimination at Benchmark and constitute one unlawful employment practice under the continuing violation doctrine established by the Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). For that reason, the Benchmark Defendants' argument must fail.

In *Morgan*, the Supreme Court held that Title VII claims that seek recovery for discrete incidents of discrimination such as termination or refusal to hire may not be reviewed under the continuing violation doctrine. 536 U.S. at 114. "However, where the plaintiff alleges that the defendant has created a hostile work environment, the continuing violation doctrine is applicable." Id. at 103. This is because a hostile work environment claim "is composed of a series of separate acts that collectively constitute one unlawful employment practice." Id. at 111. By its terms, the continuing violation doctrine applies, where, as here, "there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or

practice of tolerating such discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 359, 362 (2d Cir. 2001).

As detailed above, in her Complaint, Regan alleges a lengthy series of separate, but inter-related acts and incidents, including numerous and repeated instances of inappropriate and offensive sexualized comments and conduct, that comprised a policy and practice of discrimination at Benchmark that materially altered the terms of and conditions of Regan's employment. (*See, e.g.*, Complaint ¶¶ 54, 68-74, 80-87, 145, 162-163). The Complaint also details other acts of differential treatment that created a hostile work environment for Regan, including her being forced to flirt with clients, being singled out for intense workplace scrutiny, and being rendered progressively less able to service her business through denial of professional feedback, withholding of general office services and, ultimately, her total removal from the workplace. (*See, e.g.*, Complaint ¶¶91-99, 100-103, 104-115, 143-144, 151-154, 157-159, 165-168, 169-209). While, certain of these acts occurred more than three hundred days before Regan filed her April 2007 charge – the acts and incidents creating the hostile work environment occurred "virtually from the commencement of her employment" (Complaint ¶ 36) – it is the cumulative and interrelated nature of the conduct alleged that gives rise to Regan's hostile work environment claim and makes all of the conduct constituting and creating the hostile work environment timely for adjudication. *See, e.g., Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (the filing of a charge of discrimination with the EEOC that is timely as to any incident of discrimination renders all claims and acts of discrimination "in furtherance of" the policy or practice of discrimination timely "even if" some of those acts "would be untimely standing alone.") *Cf. Stalter v. Board of Cooperative Educational Services of Rockland County,*

235 F.Supp.2d 323 (S.D.N.Y. 2002) (McMahon, J.) (denying summary judgment as to Title VII claims because whether a continuing violation exists is an issue of fact).

In this context, the Benchmark Defendants attempt to isolate purportedly singular and discrete events, such as the comments and conduct of Robert Bourque in 2005 and 2006, *see* Def. Mem. at 7, is misguided. While abstracted out of the context and standing alone Bourque's actions might be untimely, Bourque's conduct is part of the policy and practice of discrimination at Benchmark. As such, Bourque's comments and conduct are actionable.

In sum, the allegations of the Complaint clearly fall within the continuing violation doctrine insofar as they describe a series of separate, but interrelated acts, that collectively constitute one unlawful employment practice evincing a policy and practice of discrimination at Benchmark. Thus, all of the allegations comprising Regan's hostile work environment claim, including those occurring more than 300 days prior to Regan's filing of her EEOC Charge, are timely. *See e.g., Fitzgerald, supra.* Accordingly, this aspect of the Benchmark Defendants' motion should be denied in its entirety.

## C. <u>**Regan Has Exhausted Her Administrative Remedies**</u>

A central component of the Benchmark Defendants' argument for the dismissal of Regan's Title VII claims is Regan's alleged failure to exhaust her administrative remedies as to conduct that occurred after she filed her EEOC charge in April 2007. *See* Def. Mem. at 11-12. This argument not only grossly distorts the relevant underlying facts, it flouts well-settled principles of exhaustion.

In the first instance, this aspect of the Benchmark Defendants' motion is based on the inaccurate factual premise that the April 2007 charge of discrimination is the only relevant

administrative filing made by plaintiff – a claim the Benchmark Defendants know to be false. Rather, the administrative record in this case not only includes certain supplemental affidavits filed with the EEOC by Regan, (*see, e.g.,* Complaint ¶ 169), but also a second charge of discrimination, filed by Regan with the EEOC on October 28, 2008. In this second charge, Regan specifically alleges that she was "involuntarily transferred" to the windowless office in New Jersey in retaliation for her ongoing objections to the discriminatory treatment to which she was regularly subjected by the Benchmark Defendants. (*See* Exhibit 1 to the Affirmation of Robert L. Levy, dated September 13, 2011 ("Levy Aff.")).[2] The October 2008 charge of discrimination also alleges that Regan was constructively discharged as a result of the ongoing hostile work environment and retaliatory treatment at Benchmark. *Id.*

Regan incorporates the administrative process before the EEOC into her complaint in those allegations setting forth that all conditions precedent to bringing this action have been met. (Complaint ¶¶ 5a-5b). Significantly, the EEOC Determination described in paragraph 5b of the Complaint specifically references the claims set forth in Regan's October 2008 Charge. (A full and complete copy of the EEOC Determination is attached as Exhibit 2 to Levy Aff.) In its Determination, the EEOC expressly concludes that the "involuntary transfer [of Regan] to a non-Respondent facility in New Jersey, [was] in retaliation for charging Party's protected activity", and that Regan "was constructively discharged because [workplace] conditions were so intolerable that a reasonable person under the circumstances would have felt compelled to

---

2 As the Benchmark Defendants note in their motion papers, documents incorporated by reference in the Complaint can be considered on a motion to dismiss. This doctrine has been deemed to include other documents essential to the plaintiff's claims, including the underlying administrative record. *See Zustovich v. Harvard Maintenance, Inc.*, 2009 U.S. Dist. Lexis 22640, at *14-15 (S.D.N.Y. 2009) (citing cases).

resign." (Complaint ¶5b; Levy Aff., Exhibit 2).

In addition to being based on a gross distortion of the underlying facts, this aspect of the Benchmark Defendants' motion fails under the legal principles applicable to the exhaustion doctrine. It is axiomatic that even claims not expressly raised at the administrative level may be pursued in federal court if they are "reasonably related to those alleged in the administrative complaint." *Butts v. N.Y. Dep't of Housing Preservation & Development,* 990 F.2d 1993, 1401 (2d Cir. 1401). A claim is deemed "reasonably related" for exhaustion purposes, if the "conduct complained of would fall within the scope of the EEOC investigation" that grows out of the Charge that was made. *Fitzgerald v. Henderson*, 251 F.3d at 359-360. As made clear by the EEOC's Determination herein, all of the claims alleged by Regan in her complaint did fall within the scope of the EEOC investigation, whether included in the initial charge filed with the EEOC by Regan or in the second charge she filed. Thus, even if Regan had not filed her October 2008 charge with the EEOC, the claims set forth therein are actionable insofar as they have been the subject of the administrative process.

## POINT II

## REGAN'S NEW YORK CITY LAW CLAIMS SHOULD NOT BE DISMISSED

### A. Regan Has Adequately Pled Claims for Relief Against Benchmark and Gordon And Messina Under New York City Law

Regan has sufficiently pled causes of action for disparate treatment, hostile work environment and retaliation under the New York City Administrative Code (the "City Law"). As a result of the 2005 amendments, the City Law, by its express terms, explicitly requires a more liberal construction than Title VII. *Williams v. New York City Housing Auth.,* 61 A.D.2d 62 (1st

Dep't 2009). Thus, in order to meet her pleading burden under the City Law, a discrimination plaintiff essentially must allege the existence of unequal treatment. *See, e.g., Selmanovic v. NYSE Group, Inc.*, 2007 U.S. Dist. LEXIS 94963, at *11 (S.D.N.Y. 2007) (denying motion to dismiss discrimination and retaliation claims under the City Law). For all the reasons asserted above as to the sufficiency of Regan's Title VII allegations, Regan's Complaint easily meets this burden as to Benchmark.

Similarly, Regan has sufficiently alleged claims against Gordon and Messina, individually, under an aider and abettor theory of liability. In her Complaint, Regan has specifically alleged that Gordon and Messina participated in and condoned the sexist and misogynistic conduct at Benchmark, including the conduct personally directed at Regan. (*See, e.g.*, Complaint ¶¶ 47-48, 57-59, 61-62, 74). Regan also alleges that Gordon and Messina, as the owners of Benchmark, refused to take remedial action when Regan complained of being subjected to discriminatory and retaliatory treatment. (*See, e.g.*, Complaint ¶¶ 77, 83-84, 88, 90-99, 100-02, 163). And, perhaps most fundamentally, Regan has alleged that Gordon and Messina were the ultimate decision-makers in setting the terms and conditions of her employment, and were directly responsible for the adverse employment actions to which she was subjected, including without limitation, removing her customer accounts, reducing of her compensation, banishing her to the inadequate and isolated workspace in New Jersey and making it virtually impossible for Regan to conduct business as a Benchmark employee in any meaningful way. (*See, e.g.*, Complaint ¶¶ 25, 28, 104, 107, 111, 119, 157, 160, 167-68, 169-209).

Based on these allegations of knowing and intentional acts of discrimination and retaliation by Gordon and Messina, Regan has stated a claim for relief against them as aiders and

abettors.

### B. The Actionable Conduct Alleged in the Complaint Occurred In New York City and Had an Impact in New York City

The Benchmark Defendants' contention that Regan's City Law claims must be dismissed because the discriminatory and retaliatory conduct set forth in Regan's Complaint did not have an impact in New York City, Def. Mem. at 21-22, has no merit.

As is clear from the allegations in the Complaint, this case involves discriminatory and retaliatory conduct visited on a woman employed in New York City by a New York City employer. Unlike the cases cited by the Benchmark Defendants, this is not a case where an out-of-state employee with no connection to New York City seeks to rely on the City Law based on some tangential connection to the City.

The discriminatory and retaliatory conduct at issue in this case occurred in Benchmark's New York City office, including the decision to banish Regan to a wholly unacceptable workspace in New Jersey and to keep her there under circumstances which virtually precluded her from earning her livelihood. Indeed, even during the period where Regan tried to conduct business from New Jersey, the ongoing unlawful conduct she was subjected to arose in New York and principally constituted denying her continued access to the New York City trading floor and support services available through and at the New York City office. In this way, the Benchmark Defendants prevented Regan from servicing the business that she had developed and had been servicing in New York City, a business catering to a predominantly New York City-based clientele.

Further, the approach advanced by the Benchmark Defendants would essentially allow

them to profit from the discriminatory and retaliatory act of banishing Regan to New Jersey and continually refusing Regan's requests to return her to that office and provide her a workplace free from discrimination and retaliation. Thus, the ongoing impact of the Benchmark Defendants conduct in New York City was very real indeed insofar as it allowed them to continue to avoid their obligation to provide Regan a discrimination and retaliation free workplace in New York City where she could resume her professional endeavors under some semblance of normalcy.

The Benchmark Defendants suggestion that they should effectively be permitted to profit from their own unlawful conduct – the act of banishing Regan to New Jersey and keeping her there – is offensive. Such an approach directly offends the goal of the City Law to be the most progressive anti-discrimination statute in the United States insofar as it would allow the Benchmark Defendants to avoid the dictates of the City Law through the very conduct the City Law seeks to regulate and prevent. *See Selmanovic,* 2007 U.S. Dist. LEXIS 94963, at *11; *cf. EEOC v. Local 638,* 733 F.2d 1172, 1180 (2d cir. 1985) (defendant-employers may not benefit from their own non-compliance with discrimination laws). Such an approach would enable New York City employers to avoid accountability under the City Law by simply transferring an employee to an out of state location before subjecting the employee to an adverse employment action, be it reduction in compensation, demotion or termination. This novel and dangerous approach should be summarily rejected by this Court as it is contrary to the goals of both the federal and City anti-discrimination laws and finds no support in any of the cases cited by the Benchmark Defendants in their motion papers.

### C. Regan's Claims Under the New York City Law Are Not Time Barred

The statute of limitations for claims under the City Law is three years. N.Y. City Admin.

Code § 8-502(d). *Milani v. Int'l Bus. Machines Corp., Inc.* 322 F.Supp.2d 434, 451 (S.D.N.Y. 2004). As the Benchmark Defendants are forced to concede, courts within the Second Circuit consistently have held that this three year limitations period is tolled during the period in which a complaint is filed with the EEOC. *See, e.g.*, *Wilson v. New York City Police Dep't*, 2011 U.S. Dist. LEXIS 38995 (S.D.N.Y. 2011) (citing cases); *see also Siddiqi v. New York City Health & Hosp. Corp.,* 572 F. Supp. 2d 353 373 (S.D.N.Y. 2008) (McMahon, J.) (*citing Martinez-Tolentino v. Buffalo State College,* 277 A.D.2d 899, 715 N.Y.S.2d 554, 555 (4th Dept. 2000)). This means that Regan's claims are not time barred under the City Law. The Benchmark Defendants offer no intelligible reason why this Court should deviate from this rule in this case. That Regan's claims were the subject of an extensive and lengthy investigation at the EEOC prior to the issuance of the EEOC's determination of probable cause certainly does not provide such a rationale.

Similarly, there is no legitimate basis for dismissal of the City Law claims against Gordon and Messina on statute of limitations grounds. The Benchmark Defendants' contention that these claims were not tolled by Regan's filing with the EEOC is wholly unsupported under the law. Indeed, there does not appear to be a single case within the Second Circuit applying the rule that the Benchmark Defendants propose. Notably, such a rule would be very bad policy, including being antithetical to the gatekeeper function played by the EEOC in discrimination matters. Such a rule would unduly multiply the number of discrimination lawsuits filed in the courts by encouraging plaintiffs to split their City Law aider and abettor claims into one proceeding and their federal claims against the corporate employer in another. Such a result would unnecessarily overburden the courts and be extremely inefficient for all parties to those largely duplicative

actions.

## POINT III

## LEAVE TO REPLEAD

For all the reasons stated above, Regan firmly contends that she has fully satisfied her pleading requirements as to all the claims asserted in her Complaint. If, however, this Court were to deem any of the causes of action asserted deficient, Regan seeks the opportunity to amend her pleading to address any such deficiency.

It is well-settled that when a complaint is dismissed on a motion, permission to replead should be "freely given when justice so requires." *Oneida Indian Nation of New York City v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005). Accordingly, it is the usual practice to grant permission to replead upon granting a motion to dismiss. *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see also Nyame*, 2010 U.S. Dist. Lexis 33949 at *20 (granting leave to replead upon dismissal of discrimination claims).

In the instant matter, there are numerous additional facts which Regan can allege to buttress and support the allegations in her complaint as to all facets of her discrimination claims. By way of illustration, if deemed necessary, Regan is prepared to supplement the facts alleged in her Complaint to further establish that she was subjected to discrimination by the Benchmark Defendants because of her sex, to make more explicit the causal connection between her protected activity, and certain of the adverse actions to which she was subjected and to more fully detail the facts underlying her hostile work environment claim. Additionally, Regan can more fully describe the administrative proceedings at the EEOC so as to more fully rebut the

Benchmark Defendants ill-founded contention that she has not exhausted her administrative remedies, as well as show that all of her claims are timely. Plaintiff also is prepared, if necessary, to make more explicit why Regan's banishment to New Jersey and constructive discharge had a material impact within the City of New York.

## CONCLUSION

For all of the foregoing reasons, the Benchmark Defendants' motion should be denied in its entirety.

Dated: New York, New York
September 13, 2011

BANTLE & LEVY LLP

By: ______________________
Robert L. Levy (RL-1633)
817 Broadway
New York, New York 10003
212.228.9666
Attorneys for Plaintiff