Anthony Paduano
Katherine B. Harrison
Jillian A. Lazar
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KERRY ANNE REGAN, | : | |
| Plaintiff, | : | 11 CIV 4511 (CM) |
| vs. | : | |
| THE BENCHMARK COMPANY, LLC, TRINET GROUP, INC., ADAM GORDON and RICHARD MESSINA, | : | |
| Defendants. | : | |

# REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANTS THE BENCHMARK COMPANY, LLC, ADAM GORDON AND RICHARD MESSINA

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

Attorneys for Defendants
The Benchmark Company, LLC,
Adam Gordon and Richard Messina

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. THE COURT SHOULD DISMISS PLAINTIFF'S TITLE VII CLAIMS ..... 2

A. Many of Plaintiff's Factual Allegations Fall Outside The 300-Day Period and Are Therefore Time Barred ..... 2

B. Plaintiff's Discrimination Claims Fail Because The Conduct Alleged, If True, Is Not Based On Gender ..... 4

C. Plaintiff Has Not Exhausted Her Administrative Remedies for Her Claims of Disparate Treatment ..... 5

D. Plaintiff Has Not Set Forth a Plausible Claim of Retaliation ..... 6

II. PLAINTIFF'S NYC CODE CLAIMS MUST BE DISMISSED ..... 8

A. Plaintiff's NYC Code Claims Lack The Requisite Impact in New York City ..... 8

B. Plaintiff's NYC Code Allegations Are Time Barred ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Cases**


Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) .......... 1, 1n, 4

Ballard v. Children's Aid Society,
09 Civ. 5263, 2011 WL 1664980 (S.D.N.Y. April 28, 2011) .......... 7

Bell Atlantic Corp. v. Twombly,
500 U.S. 544 (2007) .......... 1n

Boyar v. City of New York,
10 CV 65, 2010 WL 4345737 (S.D.N.Y. Oct. 28, 2010) .......... 10

Brown v. Henderson,
257 F.3d 246 (2d Cir. 2001) .......... 7

Canales-Jacobs v. New York State Office of Court Admin.,
640 F. Supp. 2d 482 (S.D.N.Y. 2009) .......... 5

Del Pozo v. Bellevue Hosp. Center,
09 Civ. 4729, 2011 WL 797464 (S.D.N.Y. March 3, 2011) .......... 8

Doner-Hendrick v. New York Institute of Technology,
11 Civ. 121, 2011 WL 2652460 (S.D.N.Y. July 6, 2011) .......... 9

E. E.O.C. v. Bloomberg L.P.,
778 F. Supp. 2d 458 (S.D.N.Y. 2011) .......... 2

Gilliard v. N.Y. Pub. Lib. Sys.,
597 F. Supp. 1069 (S.D.N.Y. 1984) .......... 6

Goodman v. Merril Lynch & Co, Inc.,
716 F. Supp. 2d 253 (S.D.N.Y 2010) .......... 1n

Gorokhovsky v. City of New York,
10 Civ. 8848, 2011 WL 2019423 (S.D.N.Y. May 19, 2011) .......... 9

Harrison v. U.S. Postal Service,
06 Civ. 13131, 2010 WL 3291804 (S.D.N.Y. Aug. 10, 2010) .......... 7

Hongyan Lu v. Chase Inv. Services Corp.,
412 Fed. Appx. 413 (2d Cir. 2011) .......... 3

Nugent v. St. Lukes-Roosevelt Hosp. Center,
303 Fed. Appx. 943 (2d Cir. 2008) .......... 7

Nweke v. Prudential Ins. Co. of America,
25 F. Supp. 2d 203 (S.D.N.Y. 1998) .......... 6

Pilgrim v. McGraw-Hill Companies, Inc.,
599 F. Supp. 2d 462 (S.D.N.Y. 2009) .......... 10

Richane v. Fairport Central School Dist.,
179 F. Supp. 2d 81 (W.D.N.Y. 2001) .......... 6

Sommersett v City of New York,
2011 WL 2565301 (S.D.N.Y. June 28, 2011) .......... 5

St. Louis v. New York City Health And Hospital Corp.,
682 F. Supp. 2d 216 (2d Cir. 2010) .......... 3, 4

Swierkiewicz v. Sorema,
534 U.S. 506 (2002) .......... 1n

Williams v. Time Warner Inc.,
09 Civ. 2962, 2010 WL 846970 (S.D.N.Y. March 3, 2010) .......... 6

Yarde v. Good Samaritan Hosp.,
360 F. Supp. 2d 552 (S.D.N.Y. 2005) .......... 8

The Benchmark Company, LLC ("Benchmark"), Adam Gordon ("Gordon") and Richard Messina ("Messina") (together "Defendants") respectfully submit this memorandum of law in further support of their motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

To defeat this motion to dismiss, Plaintiff Kerry Anne Regan ("Plaintiff") must identify facts in the Complaint giving rise to a plausible inference that Defendants created a hostile work environment, and discriminated and retaliated against Plaintiff, because of her gender. As Plaintiff now concedes, the Complaint is replete with gender neutral and time-barred allegations that simply do not give rise to Title VII or New York City Administrative Code ("NYC Code") liability. Plaintiff's brief, like the Complaint, is filled with sweeping conclusory allegations, posited, we suspect, to make the individual defendants look bad, but is bereft of the critical facts necessary to overcome Defendants' legal arguments. Thus, Plaintiff has not sufficiently alleged that Defendants' actions were because of her gender, that she suffered actionable adverse employment action, or that she exhausted her administrative remedies. In panic, Plaintiff has now filed, with her opposition, additional irrelevant materials to support her claims. Yet none of these documents lend enough credence to Plaintiff's conclusory and baseless allegations to nudge Plaintiff's claims across the line to "plausible," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009).[1]

[1] Rather than directly address the arguments set forth in Defendant's motion papers, Plaintiff first attempts to downplay the impact of Iqbal on the Supreme Court's decision in Swierkiewicz v. Sorema, 534 U.S. 506 (2002). Plaintiff minimizes the tightening of the pleading standard set forth in Iqbal and Bell Atlantic Corp. v. Twombly, 500 U.S. 544 (2007) in order to avoid setting forth factual allegations supporting plausible claims. This Court has construed Iqbal, Twombly, and Swierkiewicz together as requiring that the claim be "facially plausible." Goodman v. Merrill Lynch & Co., Inc., 716 F. Supp. 2d 253, 259 (S.D.N.Y. 2010) (Scheindlinn, J.). When reading Iqbal, Twombly and Swierkiewicz together, Plaintiff still has not set forth facts that sufficiently amplify her conclusory allegations and thus she fails to render the claims plausible.

Nor has Plaintiff rescued her NYC Code claims, which fail for the same reasons as do her Title VII claims. In addition, they fail for the more fundamental reason that the NYC Code does not apply to claims, like this one, that only affect a New Jersey resident outside of New York City.

The Complaint should thus be dismissed in its entirety.

## ARGUMENT

## POINT I

## THE COURT SHOULD DISMISS PLAINTIFF'S TITLE VII CLAIMS

### A. Many of Plaintiff's Factual Allegations Fall Outside The 300-Day Period and Are Therefore Time Barred

Plaintiff concedes that her Complaint rests in part on "separate" events which occurred more than 300 days before she filed her EEOC charge. (Opp. pp. 13-14). In an effort to salvage her hostile work environment claims, Plaintiff peppers her opposition papers with reference to an alleged "policy and practice of discrimination" at Benchmark in order to convince this Court that the discrete acts she complains of were part of a continuing violation. But Plaintiff has been unable to articulate precisely how the separate acts she complains of were related such that they constitute a continuing violation. Moreover, the fact that Plaintiff has not alleged that any other female employee of Benchmark complained of gender-based discrimination suggests the lack of a policy or practice of discrimination. "A pattern or practice case cannot rest on the mere occurrence of isolated or accidental or sporadic discriminatory acts." E.E.O.C. v. Bloomberg L.P., 778 F. Supp. 2d 458 (S.D.N.Y. 2011) (internal quotation omitted). While the continuing violation theory "may apply to cases involving specific discriminatory policies or mechanisms, ... multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a

continuing violation." Hongyan Lu v. Chase Inv. Services Corp., 412 Fed. Appx. 413, 416 (2d Cir. 2011). In Hongyan Lu, the Second Circuit found plaintiff's contentions that some of her accounts were transferred to male colleagues, that she was subject to "heightened supervision" and then eventually terminated, did not create a continuing violation:

> Aside from her own conclusory allegations, [Plaintiff] has presented no evidence that the ... alleged transfer of some of her customer accounts to [a male colleague] were part of a discriminatory policy or mechanism ... [These] allegations [] concern discrete discriminatory acts and her failure to file a timely administrative charge bars us from considering those claims.

Id. at 416-17. "[T]he continuing violations doctrine is disfavored and courts are hesitant to apply it absent a showing of compelling circumstances." St. Louis v. New York City Health And Hospital Corp., 682 F. Supp. 2d 216 (2d Cir. 2010).

With regard to the statements allegedly made by her co-worker Bourque, Plaintiff now recognizes that those fall outside the Title VII limitation period because they all occurred prior to July 22, 2006. (Opp. p. 14) Much of Defendants' other alleged conduct, -- scrutiny of Plaintiff, allegedly permitting colleagues to trade on Plaintiff's account, moving Plaintiff's seat – while timely, are, as Plaintiff concedes, gender-neutral (Opp. p. 7) and non-sexual and thus cannot be related to any alleged sexual harassment. See St. Louis at 233 (where alleged actions, though timely, "were permeated with gender-based animus of a non-sexual nature," they are "unrelated to ... acts of sexual harassment" and "cannot be said to form one unlawful employment practice") (quotation omitted). Accordingly, many of Plaintiff's allegations are time barred and may not be considered as part of her hostile work environment claim.

### B. Plaintiff's Discrimination Claims Fail Because The Conduct Alleged, If True, Is Not Based On Gender

Plaintiff argues that "the mere fact that each and every instance of discriminatory treatment" was not prefaced with the phrase "based on sex" does not "de-gender" the allegations. (Opp. p. 7) The salient point, however, is that Plaintiff's liberal and conclusory usage of the phrase "based on sex" throughout the Complaint does not turn gender neutral allegations into discriminatory conduct. Plaintiff admits that much of the conduct complained of – reassignment of a few accounts, a single mistake with respect to her commission payment, her transfer to a new office – are gender neutral. (Opp. p. 7) The same concession is required as to other allegations such as being referred to as a "dog" by male colleagues and being sent "sexually explicit materials," when in the Complaint Plaintiff acknowledged that she and her male colleagues were often the recipients of pornography. (Opp. p. 6, Compl. ¶ 50) Plaintiff cannot support her conclusory allegations that sex was the motivating factor for the conduct that she now, many years later, complains of.

Once the clearly time-barred incidents are stripped away from the Complaint, the remaining isolated remarks and conduct, even if true, "are not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment to create a hostile work environment for Plaintiff as a matter of law." St. Louis at 233. Nor do these allegations support the conclusion that Plaintiff was treated differently because of her gender, and Plaintiff has introduced no evidence to the contrary. Although Plaintiff attempts to dress up her complaint with new conclusory allegations, appearing for the first time in her opposition to this motion, these allegations are unsupported by any actual facts. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Iqbal, 129 S. Ct. at 1954. For example, Plaintiff now attempts to lead the Court to believe that she was often made

the subject of the game "wouldja, wouldja?", (Opp. p. 6) when the Complaint made clear that the game generally involved women on television. (Compl. ¶ 49) Plaintiff's brief also includes a confused reference to "Reagan being threatened with physical violence by at least on [sic] email co-worker [sic]" (Opp. p. 8), when, of course, there is no allegation of any touching whatsoever, much less threatened physical violence, in the Complaint. Such desperate tactics aside, the facts asserted simply bear no connection to Plaintiff's gender.

### C. Plaintiff Has Not Exhausted Her Administrative Remedies for Her Claims of Disparate Treatment

Plaintiff disingenuously argues that her filing of a second EEOC charge means that she exhausted her administrative remedies and may proceed with a cause of action for disparate treatment pursuant to Title VII.[2] This argument does not address the fact that Plaintiff never complained of disparate treatment in any EEOC charge. Nor has Plaintiff refuted Defendants' point that a complaint of disparate treatment is simply not sufficiently related to a complaint of harassment to be raised for the first time before a federal court. Plaintiff's EEOC charges made no reference to disparate treatment and Plaintiff should not now be permitted to introduce this new and unrelated claim. See Sommersett v City of New York, 2011 WL 2565301, at *5, 2-5 (S.D.N.Y. June 28, 2011) (Swain, J.) ("to the extent Plaintiff seeks to pursue the instant claims as ones of age- or other non-retaliation based disparate treatment or hostile work environment under the ADEA or Title VII based on post-2007 conduct the Complaint must be dismissed as unexhausted" where EEOC charge complained only of retaliation); Canales-Jacobs v. New York State Office of Court Admin., 640 F. Supp. 2d 482, 497 (S.D.N.Y. 2009) (McMahon, J.) (dismissing new claims of Title VII gender and race discrimination where

[2] In support of this red herring, Plaintiff even submitted Plaintiff's second EEOC charge and the EEOC Determination, neither of which concerned a disparate treatment claim under Title VII.

plaintiff's administrative charge was for sexual harassment and lack of disability accommodation, but "did not allege that she was discriminated against ... [or] treated differently than other employees"); Nweke v. Prudential Ins. Co. of America, 25 F. Supp. 2d 203, 214-215 (S.D.N.Y. 1998) (Sweet, J.) (dismissing claims of discriminatory policy and practice and disparate impact where EEOC charge only contained allegations of discriminatory discharge and retaliation); Gilliard v. N.Y. Pub. Lib. Sys., 597 F. Supp. 1069 (S.D.N.Y. 1984) (dismissing complaint alleging discrimination where EEOC charge was limited to claim of discriminatory discharge); Richane v. Fairport Central School Dist., 179 F. Supp. 2d 81, 93 n.6 (W.D.N.Y. 2001) ("plaintiff's pattern and practice claim could not reasonably be expected to arise out of the allegations in the EEOC charge ... which only related to personal discrimination against" plaintiff) (citation omitted).

Plaintiff's claim alleging disparate treatment should be dismissed.

### D. Plaintiff Has Not Set Forth a Plausible Claim of Retaliation

A Title VII retaliation claim requires that Plaintiff show "(1) participation in a protected activity known to Defendants, (2) an employment action disadvantaging Plaintiff, and (3) a causal connection between the protected activity and the employment action." Williams v. Time Warner Inc., 09 Civ. 2962, 2010 WL 846970, at *4 (S.D.N.Y. March 3, 2010) (Sullivan, J.).

Plaintiff insists that she references "seven distinct moments" in which she "engaged in protected activity for Title VII purposes." (Opp. at p. 10) Amongst the examples of protected activity, Plaintiff includes her complaint to Gordon and Messina that Bourque had compared her intelligence to that of his chair (Compl. ¶ 87-89) and her request that a "complaint against Bourque be filed with Benchmark's human resources provider" after Bourque allegedly began trading in Plaintiff's Perry Capital account. (Compl. ¶ 116-118) Because there is nothing

gender-based about the incidents Plaintiff complained of, neither Gordon nor Messina could possibly have known that Plaintiff allegedly thought she was engaging in protected activity. Therefore, Plaintiff has failed to meet the first prong of the retaliation inquiry: that Plaintiff participated in a protected activity known to Defendants. As such, any of the alleged retaliation for these incidents, including, inter alia, "job scrutiny and the reassignment of client accounts" (Opp. p. 10) simply can not be given credence.

In addition, the bulk of the supposedly retaliatory conduct does not rise to the level of a requisite "employment action disadvantaging Plaintiff." As in the Complaint, Plaintiff recites the reassignment of a handful of her accounts, computer connectivity issues, being scrutinized, and her transfer to the Jersey City office as examples of adverse employment action, but cites no law indicating that this is actionable when there are no credible facts suggesting that the conduct alleged occurred because of Plaintiff's gender. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). Plaintiff ignores the fact that computer problems do not constitute adverse employment action, see Ballard v. Children's Aid Society, 09 Civ. 5263, 2011 WL 1664980, at *7 (S.D.N.Y. April 28, 2011) (Marrero, J.), her own allegations that her computer was "set up" for her, (Compl. ¶ 193), and that she is only able to provide a sparse few examples of her customer accounts being "poached." Nor is scrutiny actionable. Nugent v. St. Lukes-Roosevelt Hosp. Center, 303 Fed. Appx. 943, 945 (2d Cir. 2008). Moreover, a job transfer, in and of itself, is not an adverse action. See Harrison v. U.S. Postal Service, 06 Civ. 13131, 2010 WL 3291804, at *6 (S.D.N.Y. Aug. 10, 2010) (Daniels, J.) ("if an employee earns the same salary, has the same benefits, works the same hours and has the same opportunities for promotion following a transfer then there is no adverse employment action") (citation omitted). Plaintiff complains that her commissions faltered after her transfer, yet she does not explain how,

with her continued ability to communicate with both clients and the other Benchmark offices via email, text, and telephone, she was unable to continue to service her clients.

Even if Plaintiff's transfer to the Jersey City office was an adverse employment action, Plaintiff has not alleged facts plausibly indicating a connection between filing her EEOC charge and her job transfer five months later. In her Opposition, Plaintiff did not even address Defendants' argument that there is no causal connection other than to state in conclusory fashion that she had "explicit[ly] plead[] retaliatory causality." (Opp. p. 10) The case law is replete with instances in which this temporal proximity was insufficient to support a finding of causation. Del Pozo v. Bellevue Hosp. Center, 09 Civ. 4729, 2011 WL 797464, at *7 (S.D.N.Y. March 3, 2011) (Scheindlin, J.) ("five month lapse . . . between Plaintiff's protected activity and subsequent termination is insufficient to establish causation"); Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) (McMahon, J.) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit an inference of causation. . . . Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation").

## POINT II

## PLAINTIFF'S NYC CODE CLAIMS MUST BE DISMISSED

### A. Plaintiff's NYC Code Claims Lack The Requisite Impact in New York City

Plaintiff cites to virtually no case law to support her position that Defendants' allegedly discriminatory and retaliatory conduct had any impact in New York City based on Benchmark's location within the city or that Plaintiff had formerly worked in Benchmark's New York City office. (Opp. pp. 18-19) Plaintiff's contention that she was employed in New York

City, for purposes of her NYC Code claim, ignores her own allegations concerning her transfer to Jersey City, New Jersey as the basis for her constructive discharge claim and damages.

Plaintiff's argument that dismissal of this claim "offends the goal of" the NYC Code reflects a deeply flawed analysis of the NYC Code. (Opp. p. 19) In the recent case of Doner-Hendrick v. New York Institute of Technology, 11 Civ. 121, 2011 WL 2652460 (S.D.N.Y. July 6, 2011) (Scheindlin, J.), this Court rejected such an approach, noting that the

> rule that a plaintiff need only plead and prove that the employer's decision to terminate was made in the city is impractical, would lead to inconsistent and arbitrary results, and expands [the NYC Code] protections to nonresidents who have, at most, tangential contacts with the city. Indeed, the permutations of such a rule are endless. . . . In contrast, the impact requirement is relatively simple for courts to apply and litigants to follow, leads to predictable results, and confines the protections of the [NYC Code] to those who are meant to be protected – those who work in the city ..."

Id. at *8, n.104. In that case the Court dismissed plaintiff's NYC Code claim even though the decision to terminate her was made in New York:

> because plaintiff is not a resident of New York, plaintiff's factual allegations must additionally support a reasonable inference that [the alleged discrimination] had an actual impact in New York. Plaintiff was working in Amman, Jordan at the time of her termination. Thus, plaintiff does not allege that she felt any impact in New York.

Id. at *8. The same result should apply in this case.

### B. Plaintiff's NYC Code Allegations Are Time Barred

Much of Plaintiff's Complaint is based on events which occurred more than three years before she filed her Complaint in June 2011 and are thus time-barred. Although courts in the Second Circuit have sometimes tolled the three-year limitations period, Plaintiff completely ignores the body of case law within this Circuit in which NYC Code claims were not tolled despite the filing of an EEOC Complaint. See, e.g., Gorokhovsky v. City of New York, 10 Civ. 8848, 2011 WL 2019423, at *5 (S.D.N.Y. May 19, 2011) (Sand, J.) (dismissing claims "to the

extent that they are based upon actions occurring [more than] three years prior to the filing of this action"); Boyar v. City of New York, 10 CV 65, 2010 WL 4345737, at *2 (S.D.N.Y. Oct. 28, 2010) (Baer, J.) ("claims accruing [more than three years prior to instituting suit] are barred by the statutory time period"); Pilgrim v. McGraw-Hill Companies, Inc., 599 F. Supp. 2d 462 (S.D.N.Y. 2009) (McMahon, J.) (barring claims that arose more than three years prior to filing suit). As Defendants stated, the "intelligible reason" to apply the limitations period here is that behind all limitations periods: protection against stale evidence, failure of witness recollection and finality of litigation. Plaintiff could have chosen to file an EEOC charge or a court action alleging NYC Code claims at any time following the commencement of her employment, if, as alleged, the conduct complained of began "[f]rom virtually the inception of her employment" (Compl. ¶ 43), in 2003. No just purpose is served in permitting Plaintiff, who sat on her rights for eight years, to invoke the protections of the NYC Code at this late date.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening brief, the Complaint should be dismissed in its entirety.

Dated: New York, New York
September 29, 2011

Respectfully submitted,

PADUANO & WEINTRAUB LLP

By: [signature]

Anthony Paduano
Katherine B. Harrison
Jillian A. Lazar
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020

Attorneys for Defendants
The Benchmark Company, LLC,
Adam Gordon and Richard Messina